**Ronald HOWARD, Plaintiff,**

v.

**NAVISTAR INTERNATIONAL, TRANSPORTATION CORP., Defendant.**

**No. 93–C–894.**

United States District Court, E.D. Wisconsin.

Nov. 3, 1995.

Willie J. Nunnery, Nunnery Law Office, Madison, WI, for plaintiff.

Robert H. Duffy and Michael M. Grebe, Quarles & Brady, Milwaukee, WI, for defendant.

## ORDER

WARREN, Senior District Judge.

Now before the Court is defendant Navistar International Transportation Corporation's (Navistar) motion for summary judgment dismissing all the claims against it in the above-captioned action. For the following reasons, the defendant's motion will be granted and this case will be dismissed.

## I. BACKGROUND

### A. SUMMARY OF FACTS

In May 1986, plaintiff Ronald Howard has hired by defendant Navistar to work as a Drill Press Operator at Navistar's Waukesha, Wisconsin machine shop. (Plaintiff's Proposed Findings of Fact (PPFOF) ¶ 36; Defendant's Proposed Findings of Fact (DPFOF) ¶ 15.) In October 1990, after working at Navistar for several years, Howard began to experience pain in his right elbow. On December 12, 1990, Dr. Richard Bolt diagnosed Howard with lateral epicondylitis of the right elbow, otherwise known as elbow tendinitis. (PPFOF ¶ 37; DPFOF ¶ 16.) Dr. Bolt placed the following restrictions on Mr. Howard's employment: (1) he could not perform any work between January 10, 1991 and January 16, 1991; (2) he subsequently could perform only "light duty" work; and (3) he could not perform work which required the repetitive use of his right arm. (DPFOF ¶ 16.)

Howard began seeking treatment for his condition from a different physician, Dr. John R. Phillips, who confirmed Dr. Bolt's diagnosis of lateral epicondylitis. (DPFOF ¶ 17.) Dr. Phillips restricted Howard from working at all from January 31, 1991 until April 9, 1991, after which he was permitted to return to Navistar for regular duty. (Id.) Shortly after Howard returned to work on April 9, Navistar transferred him to a Machine Operator position, in part because he had requested the transfer and in part to accommodate his arm condition. (DPFOF ¶ 18.)

On September 20, 1991, Mr. Howard had surgery on his right elbow. Dr. Phillips subsequently restricted him from performing

any work until February 3, 1992. On February 11, 1992, Howard returned to "light duty" work at Navistar. (DPFOF ¶ 19.) On May 13, 1992, Howard had a second operation on his right elbow. On Dr. Phillips' orders, Howard did not return to work until July 27, 1992, where he was restricted to working no more than four hours per day, lifting no more than ten pounds frequently or twenty pounds regularly, and performing no high speed repetitive work. (DPFOF ¶ 20.)

During this time period, Howard was assigned to operate a machine called the "Potato Masher." This assignment required Howard to tighten castings using a wrench. (DPFOF ¶ 23.) Operating this machine apparently caused Howard discomfort in his arm; on December 2, 1992, he submitted a note from Dr. Phillips stating that Howard's elbow injury prevented him from tightening castings with a wrench. (PPFOF ¶ 51; DPFOF ¶ 24.) In an attempt to accommodate Mr. Howard's limitations, Joe Putrich, a Navistar foreman, supplied Howard with an air ratchet to use instead of a manual wrench. (Deposition of Joe Putrich at pp. 84–85; Affidavit of Joe Putrich ¶ 6.) [1]

Howard continued to complain about the pain in his elbow and on December 11, 1992, he submitted another note from Dr. Phillips which stated that Howard could not perform any job that would irritate or cause pain to his arm. (DPFOF ¶ 25.) Upon receiving this note from Howard, Mr. Putrich informed Howard that there was no work available which fell within this restriction and instructed Howard to report to Mr. Donald Stenulson in the Navistar Employee Relations Department. (Putrich Aff. ¶ 7.)

Stenulson reviewed the note from Dr. Phillips and reached the conclusion that the company needed a more definitive statement of Howard's medical restrictions in order to determine which machines Howard could operate and which operations he could perform. (Affidavit of Donald J. Stenulson ¶ 4; Howard Dep. at pp. 115–16.) Stenulson also told

Howard that due to the vagueness of Dr. Phillips' restriction Navistar could not provide any work to Howard at that time. (Howard Dep. at p. 116.) On December 15, 1992, Dr. Phillips sent another letter to Navistar further explaining Howard's medical restrictions. Dr. Phillips indicated that Howard was restricted from lifting over 15 to 20 pounds and using manual or air wrenches to tighten castings. (DPFOF ¶ 28.)

In an attempt to clarify the nature and extent of Howard's medical restrictions, Navistar ordered an industrial evaluation of the machine shop and a functional capacity evaluation (FCE) of Howard in order to determine which machines he could operate and which functions he could perform. The industrial evaluation took place on December 22, 1992 and the FCE took place on December 30 and 31, 1992. (DPFOF ¶ 27.) Navistar received the results of these evaluations on January 11, 1993, and shared the results with Mr. Howard on January 12, 1993. The FCE recommended that Howard be restricted from lifting more than fifteen pounds ten times an hour and from lifting ten pounds ten times an hour if the weight must be shifted at waist level. (DPFOF ¶ 29.)

Navistar provided Howard with work consistent with these restrictions and he continued to work, apparently without incident, until October 1993. (DPFOF ¶ 30.) Then, on October 17, 1993, Dr. Phillips diagnosed Howard with lateral epicondylitis of the *left* elbow. As a result of this condition, Howard did not return to work until December 14, 1993. At that time, Dr. Phillips imposed the same restrictions as Howard had been under before October 14, 1993. Navistar provided work to Howard consistent with those restrictions. (DPFOF ¶ 31.)

One week later, on December 21, 1993, Howard submitted a handwritten note from Dr. Phillips expanding on Howard's medical restrictions. The note indicated that Howard should not use either arm to perform

---

1. Howard claims that this was somehow an attempt to harass him rather than an attempt to accommodate his injury. (Deposition of Ronald Howard at pp. 109–110.) Indeed, Howard filed a union grievance on December 9, 1992, alleging that Navistar failed to accommodate his disability. *See* Affidavit of Willie J. Nunnery, Exh. J. The Court, however, sees no reason to conclude that Mr. Putrich's behavior was anything other than an attempt to accommodate Mr. Howard's impairment.

high speed repetitive work or to lift over fifteen to twenty pounds. On December 21, 1993, Howard, Steve Boivin (a representative of the union), and Mike Morse (Howard's supervisor) met and created a list of jobs Howard felt he could perform consistent with his medical restrictions. (DPFOF ¶ 32.) Navistar provided Howard with work consistent with those restrictions and with the job list.[2] (Putrich Aff. ¶ 10.)

Throughout 1994, Howard made complaints to his new supervisor, Scott Homa, regarding certain jobs Howard was asked to perform that he believed fell outside his medical restrictions. Homa made attempts to accommodate Howard, often reassigning him to different jobs. (PPFOF ¶¶ 65–66.) At times, Howard disagreed with the reassignments and accused Navistar of violating the Americans with Disabilities Act (ADA). (Deposition of Scott Homa at p. 19.) Howard continued to work under Homa throughout 1994 under basically the same circumstances. Howard stopped working at Navistar on March 1, 1995 and has not returned to work since then. (Affidavit of Marie Renn (October 2, 1995) ¶ 2.) He claims that he is psychologically and mentally debilitated due to his elbow injury. (*Id.* ¶ 3.)

## B. *Procedural History*

On September 24, 1992, Howard filed a discrimination claim with the State of Wisconsin Equal Rights Division (ERD), alleging that Navistar had discriminated against him in violation of the ADA by not permitting him to work overtime. (DPFOF ¶ 3.) On December 15, 1992, Howard filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) alleging that Navistar had discriminated against him in violation of the ADA and had retaliated against him for filing a previous charge of discrimination. (DPFOF ¶ 4.) On May 26, 1993, the EEOC issued a Notice of Right to Sue in this charge. (DPFOF ¶ 5.) On August 16, 1993, Howard filed this lawsuit alleging that Navistar had

discriminated against him in violation of the ADA. (DPFOF ¶ 6.)

Subsequent to filing this lawsuit, Howard filed another charge with the ERD and the EEOC. (DPFOF ¶ 7.) The EEOC issued a Notice of Right to Sue in this charge on November 10, 1994 and the ERD dismissed Howard's complaint in the same charge. (DPFOF ¶¶ 8, 9.)

On October 7, 1994, this Court granted Howard's motion for leave to amend his complaint in part and denied Howard's motion for a preliminary injunction. (Decision and Order of October 7, 1994.) On January 15, 1995, Howard filed an amended complaint with this Court. Pursuant to this Court's scheduling order, the defendant filed this motion for summary judgment on July 31, 1995. This motion is now fully briefed and ready for resolution.

## II. *LEGAL STANDARD*

Federal Rule of Civil Procedure 56 requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there is a *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.* Thus, a complete failure of proof on an essential element of a plaintiff's case makes all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the initial burden of showing that there

---

2. Howard disputes this, but provides no evidence that he was forced to perform any work outside

of his medical restrictions.

are no material facts in dispute and that judgment should be entered in its favor. *Hannon v. Turnage,* 892 F.2d 653, 656 (7th Cir.1990), *cert. denied,* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A defendant moving for summary judgment may satisfy this initial burden by pointing to a plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *See Anderson,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986); *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53. Once the movant satisfies this initial burden, the burden then shifts to the non-moving party, who must "go beyond the pleadings" and designate specific facts to support each element of its cause of action, showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Becker v. Tenenbaum–Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990). In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989).

### III. *DISCUSSION*

#### A. EMPLOYMENT DISCRIMINATION CLAIM

■ The ADA prohibits an employer from discriminating against a qualified individual with a disability because of that person's disability. 42 U.S.C. § 12112. To state a cause of action of discrimination under the ADA, a plaintiff must establish three elements: (1) that he suffers from a disability as defined by the ADA; (2) that he is otherwise qualified, that is with or without reasonable accommodation he is able to perform the essential functions of the job; and (3) that the employer discriminated against him because of his disability. *See White v. York International Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995). In support of its summary judgment motion, the defendant challenges the plaintiff's ability to establish each of these elements. The Court is extremely skeptical of Howard's ability to show either that he was an otherwise qualified individual or that Navistar discriminated against him.

However, we need not reach these issues because we conclude that the plaintiff is not disabled within the meaning of the ADA. For this reason, the defendant's motion for summary judgment will be granted.

■ To survive a defendant's summary judgment motion, an ADA plaintiff must meet the threshold burden of establishing that he is disabled under the statute. *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1454 (7th Cir.1995). Under the ADA, "disability" means,

1. a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

2. a record of such an impairment; or

3. being regarded as having such impairment.

42 U.S.C. § 12102(2). In support of his discrimination claim, Howard relies on the first and third definitions of disability.

#### 1. *Howard does have an impairment which substantially limits a major life activity*

■ Howard first alleges that he is disabled because he has a physical impairment which substantially limits his ability to perform a major life activity. We accept Howard's allegation that his lateral epicondylitis is a physical impairment. However, not every physical impairment or limitation constitutes a disability; only those that "substantially limit" a "major life activity" trigger the protections of the ADA. *See Roth,* 57 F.3d at 1454; *Hamm v. Runyon,* 51 F.3d 721, 726 (7th Cir.1995).

The EEOC, in the implementing regulations to the ADA, has defined "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 CFR § 1630.2(i). *See also Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). Howard has not alleged that he is unable to perform any of the listed functions other than his job at Navistar. Indeed, the uncontroverted evidence shows that Howard is able to care for himself and perform all

**928**

normal day-to-day activities (including shooting pool in a tavern pool league) without difficulty. (Howard Dep. at pp. 14–15, 45–46.) *Compare Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995) (plaintiff who can feed herself, drive a car, attend her grooming, carry groceries, wash dishes and pick up trash with physical impairment cannot establish a substantial limitation on any major life activity other than working).

■ Therefore, Howard must rely on his inability to work to show he is disabled. To demonstrate that his physical impairment "substantially limits" his ability to work, Howard must show "significant[ ] restrict[ion] in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." *Bolton*, 36 F.3d at 942 (quoting 29 CFR § 1630.2(j)(3)(i)). Under the ADA, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 CFR § 1630.2(j)(3)(i). Rather, "an ADA plaintiff must be precluded from working generally." *Kohnke v. Delta Air Lines, Inc.*, 1995 WL 505973 at *4 (N.D.Ill.1995).

In assessing whether Mr. Howard's impairment significantly restricts his ability to perform work as compared to a nonimpaired person with similar training and skills, the Court must first consider the nature and severity of the alleged impairment, the duration or expected duration of the impairment, and the permanent or long-term impact resulting from the impairment. 29 CFR § 1630.2(j)(2).

■ In our view, Howard's physical impairment—tendinitis of the elbow—is not a particularly severe one. *See Byrne v. Bd. of Ed., School of West Allis–West Milwaukee*, 979 F.2d 560, 565 (7th Cir.1992) ("The statute's inclusion of the limiting adjectives 'sub-

stantial' and 'major' emphasizes that the impairment must be a significant one.") (citation omitted).[3] This impairment was not sufficiently severe to prevent Howard from shooting pool on a relatively regular basis. *See Fuqua v. Unisys Corp.*, 716 F.Supp. 1201, 1205–06 (D.Minn.1989) ("A Plaintiff's participation in recreation activities, for example, may be evidence tending to undermine a finding of disability.") And although Dr. Phillips placed permanent restrictions on Howard's work, the long-term impact resulting from the impairment does not appear to be significant. Indeed, the most restrictive medical limitations ever imposed upon Howard were that he refrain from using either arm to perform high speed repetitive work or to lift over fifteen to twenty pounds. (Howard Dep., Exh. 17.) These modest restrictions do not suggest a substantial limitation on Howard's ability to work generally.

■ In addition, Howard has produced no evidence from which a reasonable jury could conclude that he is unable to perform class of jobs or a broad range of jobs in various classes. Howard argues that "there is a certain class of jobs that he could not do, chipping, grinding, lifting over 15 to 20 pounds and jobs that required the use of manual or air wrenches to tighten down castings." (Plaintiff's Response to Defendant's Summary Judgment Motion at p. 24.) Howard, however, has not pointed to any class of jobs or range of jobs in different classes that requires chipping, grinding, lifting over 15 to 20 pounds, or using wrenches. Moreover, Howard has failed to introduce any evidence relating to his vocational skills or training, the geographical area to which he has access, or the number and type of jobs which demand similar training from which he would also be disqualified because of his physical impairment. *See Bolton*, 36 F.3d at 944; *Marschand v. Norfolk and Western Ry. Co.*, 876 F.Supp. 1528, 1540 (N.D.Ind.1995).[4] An

---

3. The *Byrne* case was interpreting language from the Rehabilitation Act which uses the same language to define handicap as the ADA uses to define disability. *See* 29 U.S.C. § 706(8)(B). Congress intended that Rehabilitation Act case law inform courts' determinations of the existence of a disability under the ADA. *See Vande Zande v. Wisconsin Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir.1995). *See also* Henry H. Perritt,

Jr., Americans With Disabilities Act Handbook 29 (2d ed. 1991).

4. The ADA regulations provide that the Court may also consider three factors in determining whether an impairment substantially limits the major life activity of working:

ADA plaintiff who fails to make such a showing cannot survive a defendant's motion for summary judgment. *Marschand,* 876 F.Supp. at 1539 (citing *Bolton,* 36 F.3d at 944).

■ At best, Howard has established that he is substantially limited in his ability to operate a Navistar machine called the "Potato Masher." (DPFOF ¶ 23, 24.) This limitation is not enough: "It is well established that the inability to perform a particular job for a particular employer is not sufficient to establish a handicap; the impairment must substantially limit employment generally." *Byrne,* 979 F.2d at 565. *See also Aucutt v. Six Flags Over Mid–America, Inc.,* 869 F.Supp. 736, 744 (E.D.Mo.1994) (the term "working" does not "refer to working at a particular job, or at a job of one's choice").

■ Indeed, Howard cannot even show that he is physically unable to perform the job of Machine Operator at Navistar. Even though Howard could not operate the "Potato Masher," he was able to operate other machines at the plant. "[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to the substantial limitation of the activity of working." *Dutcher,* 53 F.3d at 727. Moreover, despite his limited medical restrictions, the undisputed evidence shows that Howard continued to perform his duties as a Machine Operator through March of 1995, when he voluntarily left Navistar. Howard was not only not restricted from working generally, he was not even limited from working at the job he held.

For the foregoing reasons, the Court concludes that Howard has failed to show that he is substantially limited in his ability to perform the major life activity of working.

1. The geographical area to which the individual has reasonable access;
2. The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment; and

### 2. *Navistar did not regard Howard as being disabled*

■ Howard also argues that he is disabled under the ADA because Navistar regarded him as being disabled. *See* 42 U.S.C. § 12102(2)(C). The ADA regulations define "regarded as having such an impairment" as follows:

1. Having a physical or mental impairment that does not substantially limit major life activities but being treated by a covered entity as constituting such limitation;
2. having a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
3. not having a physical or mental impairment but is treated by a covered entity as having substantially limiting impairment.

29 CFR § 1630.2(*l* ).

It is undisputed that Mr. Howard's tendinitis constitutes a physical impairment; therefore, he cannot rely on the third definition from the regulations. Moreover, as we have already concluded in the previous section, Howard's physical impairment does not substantially limit a major life activity in general. He presents no evidence which would tend to support a conclusion that the attitudes of others toward his tennis elbow create a substantial limitation on his ability to perform major life activities. Accordingly, Howard must rely on the first definition of "being regarded as disabled"—having a physical impairment that does not substantially limit major life activities, but being treated as though his impairment did so limit him.

■ This provision of the ADA is designed to combat invidious stereotypes re-

3. The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.

29 CFR § 1630.2(j)(3)(ii).

garding disabled members of society. According to Judge Posner, the "being regarded as disabled" prohibition in the ADA,

> [A]lthough at first glance peculiar, actually makes a better fit with the elaborate preamble to the Act, in which people who have physical or mental impairments are compared to victims of racial and other invidious discrimination. Many such impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired because of their skin color or some other vocationally irrelevant characteristic.

*Vande Zande,* 44 F.3d at 541. *See also School Board of Nassau County, Florida v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987) (by enacting "regarded as" prong, "Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.");[5] Henry H. Perritt, Jr., Americans With Disabilities Act Handbook 28–29 (2d ed. 1991) ("Any limitation caused by stereotypes about physical or mental conditions is logically covered by the third prong.").

Howard has failed to produce any evidence of the existence of invidious stereotypes against individuals with tennis elbow. Nor is the Court aware of any such stereotypes. Moreover, Howard has produced no evidence that Navistar regarded his impairment as any more limiting than was represented to the company by Howard himself or by his doctor. Navistar simply made work accommodations in response to Howard's medical restrictions; there is no evidence that the company ever restricted Howard from operating any machinery because it independently made a judgment that he was unable to operate a machine because of his tendinitis. To hold Navistar liable under the ADA for attempting to accommodate Howard's medical restrictions would totally undermine the purpose of the statute. *See* 42 U.S.C. § 12101(b).

Howard's only plausible argument in support of his claim that Navistar regarded him as disabled is based upon a letter sent to Howard's physician by Marie Renn on behalf of Navistar. The letter reads, in pertinent part:

> Our company policy is that employees who are recovering from an injury and have work restrictions are not eligible for overtime work. We want the employee to be able to heal as soon as possible and have the restrictions lifted. Your work release stating his limitations are permanent isn't acceptable to allow him overtime work.

(Affidavit of Willie Nunnery, Exh. F.) Howard claims that "[a] clear inference can be drawn from Marie Renn's letter that as of September 28, 1992, the plaintiff was regarded as having a disability or an impairment." (Plaintiff's Response at p. 26.)

As a preliminary matter, we note that Howard has the standard wrong. Whether Navistar regarded him as being physically impaired is irrelevant. What matters is whether Navistar regarded the impairment as substantially limiting Howard's ability to perform a major life activity. The undisputed evidence shows that Navistar did not regard Howard as so limited, and in fact, continued to provide him with work assignments throughout the relevant time period. (*See* DPFOF ¶¶ 20, 23, 30, 32.) The fact that Navistar did not assign Howard to operate the "Potato Masher"—at his request—does not tend to show that Navistar regarded Howard as being substantially limited in the major life activity of working. *See Byrne,* 979 F.2d at 567 ("Courts have uniformly held 'that an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job.'") (quoting *Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986)).

Moreover, it is apparent from the language of the September 28, 1992 letter that Navistar's policy was to limit overtime for injured

---

5. The *Arline* Court was interpreting virtually identical language from the Rehabilitation Act. *See supra,* note 3.

employees during a temporary healing period only. Accordingly, this policy does not even implicate the ADA because it has nothing to do with permanent medical conditions which could constitute a disability under the Act. Furthermore, Howard has not even alleged that he was denied the opportunity to work overtime. Indeed, Navistar has introduced uncontradicted affirmative evidence that, although Howard was restricted from working overtime for two months, he was eventually permitted to make up all overtime opportunities he had missed. (DPFOF ¶ 35.)

Therefore, the Court concludes that Navistar did not regard Howard as disabled. Based upon this conclusion and our conclusion that Howard was not substantially limited in his ability to perform one or more major life activities, we hold that Howard is not disabled within the meaning of the ADA. Accordingly, the defendant's motion for summary judgment dismissing Count I of the complaint will be granted.

### B. *Retaliation Claim*

In Count II of his complaint, Howard alleges that Navistar retaliated against him because he asserted his rights under the ADA. The Act does recognize a cause of action for retaliation. It provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203. To establish a prima facie case of retaliation, a plaintiff must prove (1) that he engaged in activity protected by the ADA, (2) that an adverse employment action occurred, and (3) that there exists a causal link between the protected activity and the adverse employment decision. *See Roth*, 57 F.3d at 1458; *Eckles v. Consolidated Rail Corp.*, 890 F.Supp. 1391, 1416 (S.D.Ind.1995).

It is undisputed that Mr. Howard engaged in protected activity under the ADA; he asked for accommodation, made complaints, and filed various formal charges. At issue here is whether Navistar took any adverse employment action against Howard because of those activities.

Howard makes two rather lame arguments in support of his retaliation claim: (1) that his supervisor, Joe Putrich, "completely ignored the plaintiff's request for an accommodation and completely ignored the weight restrictions imposed upon the plaintiff"; and (2) that another of his supervisors, Scott Homa, called Howard a "wussy." (Plaintiff's Response at 31.)

Howard's first argument is simply not factually supported by the record. Mr. Putrich did *not* completely ignore Howard's request for an accommodation. When Howard complained of pain from using a manual wrench, Putrich gave him an air wrench. (DPFOF ¶ 24). When Howard continued to complain, Putrich referred him to the Employee Relations Department and additional accommodations were subsequently made by Navistar. (DPFOF ¶¶ 25, 27, 29, 30.) While it is apparent that Navistar and Howard disagreed as to what accommodations were necessary and appropriate, the factual record simply does not support Howard's claim that Navistar's handling of the situation amounted to an adverse employment action. Moreover, Howard has failed to introduce any evidence other than his own unsupported allegations which would suggest a causal relationship between his assertion of his ADA rights and Navistar's alleged failure to accommodate his physical impairment. Indeed, the uncontroverted evidence shows that Navistar was at all times motivated by legitimate business concerns when it assigned Howard to various positions in the plant. (*See* Putrich Aff. ¶¶ 2, 3.)

The plaintiff's second claim of retaliation is equally meritless. Howard's claim that his supervisor called him a "wussy," even if true, would not constitute an adverse employment action under the ADA. In a similar context, the Seventh Circuit explained adverse employment action as follows:

[A] material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty National Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993) (interpreting similar language in the Age Discrimination in Employment Act).

■ Since he fails to allege any actual change in the terms and conditions of his employment, Howard must rely on the "other indices" option. He appears to allege that his supervisor's reference to him as a "wussy," along with other statements by co-workers which Howard characterizes as taunting and humiliating, constituted on-the-job harassment. Such harassment can constitute an adverse employment action only if it is sufficiently severe and pervasive so as to rise to the level of discrimination. *Vande Zande,* 44 F.3d at 546 ("[T]here is no separate offense under the Americans with Disabilities Act called engaging in a pattern of insensitivity.").

■ To establish a harassment claim, the plaintiff must show that he was subject to harassment because he asserted his rights under the ADA, and that this harassment (1) subjectively affected his ability to do his job, and (2) would be considered hostile as compared against an objective standard of reasonableness. *Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1271–72 (7th Cir.1991) (citations omitted) (interpreting similar provision of Title VII). Howard fails to introduce any evidence beyond his own bare allegations that he was subject to a pattern of taunting, humiliation and mistreatment by coworkers or that Navistar management was aware of any harassment that may have occurred. With respect to Scott Homa's reference to Howard as a "wussy", Howard does not even allege that this reference subjectively affected his ability to perform his job. Moreover, this one isolated and relatively innocuous remark could not have created a hostile work environment as measured by an objective standard of reasonableness. *See Carr v. Allison Gas Turbine Div., General Motors Corp.,* 32 F.3d 1007, 1009 (7th Cir.1994) (in-

terpreting Title VII). No reasonable jury could conclude that this remark created an environment so hostile as to constitute an adverse employment action.

Therefore, because Howard has failed to introduce evidence from which a reasonable trier of fact could conclude that he suffered an adverse employment action because he asserted his rights under the ADA, the defendant's motion for summary judgment on Count II of the complaint will be granted.

## IV. SUMMARY AND ORDER

Based on the foregoing analysis, the Court concludes that plaintiff Ronald Howard is not disabled under the ADA because he was neither substantially limited in a major life activity nor regarded as disabled by his employer. Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion for summary judgment is **GRANTED** with respect to Count I of the complaint.

The Court further concludes that defendant Navistar did not retaliate against Mr. Howard because he asserted his rights under the ADA. Accordingly,

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment is also **GRANTED** with respect to Count II of the complaint, and this case is hereby **DISMISSED.**

**SO ORDERED.**