**Gary McCLAIN, Plaintiff,**

v.

**SOUTHWEST STEEL COMPANY, INC., a corporation, Defendant.**

**No. 95–C–751–H.**

United States District Court, N.D. Oklahoma.

June 25, 1996.

Eastern State Hospital in Vinita, Oklahoma, for treatment of problems stemming from several deaths in his and his wife's families, for verbal fighting with people, and for "just everyday living." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3.) He subsequently was admitted to Tulsa Regional Medical Center for similar treatment. (*Id.*) Plaintiff was prescribed medication for depression and high blood pressure.

On June 14, 1995, Plaintiff's supervisor, Dwayne Ross, plant superintendent Earl Williams and safety engineer Roland Ferrell made a joint decision to terminate. Mr. McClain for allegedly violating Southwest Steel's policy against absenteeism. Following his termination, Plaintiff told his doctor that he missed work the day he was terminated because he had experienced a "kind of lightheadedness, [and] everything just looked kind of funny." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 8.)

### I.

Summary judgment is appropriate where "there is no genuine issue as to any material fact," *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Insurance Corp.,* 805 F.2d 342, 345 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987), and "the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). In *Celotex,* the Supreme Court held:

Thomas L. Bright, Tulsa, OK, for plaintiff.

Janet M. Reasor, Zieren & Reasor, Tulsa, OK, for defendant.

### ORDER

HOLMES, District Judge.

This matter comes before the Court on a Motion for Summary Judgment by Defendant, Southwest Steel Company, Inc. (Docket # 19). The Court granted Plaintiff's motion to amend his complaint on June 12, 1996 (styled as "Second Amended Petition"). On June 14, 1996, the Court held a hearing with respect to Defendant's motion.

Defendant Southwest Steel employed Plaintiff Gary McClain as a "draw bench operator" from 1983 until June 14, 1995. In March 1993, Mr. McClain was admitted to

> [t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552.

A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed.R.Civ.P. 56(e), sufficient to raise a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48,

106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

Summary judgment is only appropriate where "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 250, 106 S.Ct. at 2511. As the Supreme Court held, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. Thus, to defeat a summary judgment motion, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)).

In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

## II.

In Claim I and Claim II, Plaintiff alleges that his termination constituted a wrongful discharge in violation of Oklahoma public policy. In Claim I, Plaintiff contends that his discharge was based on "handicap and disability discrimination." (Pl.'s Second Amended Petition at 3.) In Claim II, Plaintiff alleges that his termination was motivated by discrimination regarding mandatory leave taken in connection with a serious health condition. (*Id.* at 5.) In *List v. Anchor Paint Mfg. Co.*, 910 P.2d 1011 (Okla. 1996), the Oklahoma Supreme Court held that common law claims of age discrimination were barred as a matter of law, stating that "[b]ecause Mr. List's statutory remedies are adequate and his common law claim is based solely on his status, *his statutory remedies are exclusive*." *Id.* at 1015 (emphasis added). In the present case, Plaintiff's state common law claims are based solely on his status as an allegedly "disabled" individual. Applying *List* to the instant case,[1] the Court concludes that Plaintiff's statutory remedies under the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, are exclusive, and thus his claims for wrongful discharge in violation of Oklahoma public policy are barred. Accordingly, Defendant's motion for summary judgment with respect to Claim I and Claim II is hereby granted.

## III.

In Claim III, Plaintiff alleges that Defendant violated the federal Family and Medical Leave Act ("FMLA") by terminating him for absenteeism rather than granting him mandatory leave as required by the statute. Plaintiff contends that he suffers from chronic nausea, diarrhea, vomiting, severe headaches, dizziness, and/or lightheadedness for which he has been under the continuing care of Dr. Dwight Korgan. Plaintiff further claims that he periodically reported these problems to Dr. Korgan, that these symptoms continued over an extended period of time, and that Plaintiff had occasional episodic recurrences of the symptoms that prevented him from working. Defendant denies that the medical evidence is sufficient to support Mr. McClain's claim that, at the time of his termination, he had a "serious health condition" under the FMLA.

---

1. At the hearing, Plaintiff conceded that *List* controlled the allegations contained in Claim I. The Court holds that *List* controls the allegations in Claim II as well.

Defendant alleges that on May 18, 1995, Plaintiff received a written employee evaluation in which he was given an "unacceptable" rating due to poor attendance and was told he must improve his attendance in the future. Defendant further alleges that on Saturday, June 10, 1995, Plaintiff failed to report for work and also failed to notify his employer that he would be absent. Defendant alleges that Plaintiff again failed to report for work without notice four days later, on June 14, 1995. In response to these allegations, Plaintiff states that he does not recall being expected at work on June 10, a Saturday, and that he had called in sick on the morning of June 14.

■ The FMLA provides for a private right of action by employees for violations of the statute. 29 U.S.C. § 2617(a)(2). The FMLA states, in applicable part:

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—

(A) for damages equal to—

(i) in the amount of—

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; . . .

.    .    .    .    .

(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617(a)(1). The statute and the regulations set forth a framework for any cause of action brought under the FMLA. In order for an "eligible employee" to establish liability by an "employer," as both terms are defined by the FMLA, 29 U.S.C. § 2611(2) & (4), such employee must establish (1) entitlement to leave as defined by 29 U.S.C. § 2612(a)(1), and (2) that such entitlement to leave was interfered with by the employer in violation of 29 U.S.C. § 2615.[2] In response, an employer may assert as affirmative defenses (1) that the plaintiff failed to provide the notice required by the FMLA and the regulations promulgated by the Department of Labor, 29 U.S.C. § 2612(e)(1) (applying to foreseeable leave only); 29 C.F.R. § 825.303 (applying to unforeseeable leave); and/or (2) that the plaintiff failed to provide sufficient "certification issued by the health care provider," if and to the extent certification was required by the employer in the particular case, 29 U.S.C. § 2613; 29 C.F.R. §§ 825.305–308.

With respect to Defendant's liability in the instant case, the Court concludes that there

---

**2.** Defendant implies that the standards established under the ADA should apply to a cause of action for wrongful termination under the FMLA. (Def. Br. in Support of Summ. J. 9–11) (citing *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 259 (N.D.Miss.1995).) The *Oswalt* court held that:

[t]he plaintiff must produce evidence that he or she is protected under the FMLA, that he or she suffered an adverse employment decision, and either that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA or that the adverse decision was made because of the plaintiff's request for leave.

889 F.Supp. at 259. The Court holds that this formulation of liability is supported neither by the statute nor by the regulations promulgated by the Department of Labor. While the FMLA has some of the same anti-discrimination characteristics as the ADA and Title VII, there is no requirement that a employee requesting leave demonstrate that he had been treated less favorably than an employee not requesting leave. Moreover, the FMLA imposes affirmative duties upon employers with regard to family and medical leave, and thus can be characterized as a present entitlement to qualified leave and not merely a *post hoc* prohibition against discrimination.

is a genuine issue of material fact at least as to whether Plaintiff was entitled to leave under the FMLA at the time of his termination. *See* 29 U.S.C. § 2612; 29 C.F.R. § 825.114. Therefore, summary judgment as to Claim III is inappropriate.

■ With respect to the available affirmative defenses, Defendant argues that Plaintiff failed to provide sufficient notice for his absences under the FMLA, and therefore, he is precluded altogether from seeking its protections. Plaintiff is not required, however, to specify that his request for leave is covered by the FMLA in order to come within its provisions. *See Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 761–64 (5th Cir. 1995) (holding that an employee requesting unforeseeable medical leave is not required to even mention the FMLA when requesting leave for a serious health condition); *see also* 29 C.F.R. § 825.303 (setting out notice requirements for unforeseeable leave). As the Fifth Circuit stated in *Manuel*,

"it is the employer's responsibility to designate leave ... as FMLA-qualifying, based on information provided by the employee." 29 C.F.R. § 825.208(a)(2). If the employer does not have sufficient information about the employee's reason for taking leave, "the employer should inquire further to ascertain whether the paid leave is potentially FMLA-qualifying." *Id.* To require the employee to designate her leave as pursuant to the FMLA would render these provisions meaningless, if not directly contradict them.

*Manuel*, 66 F.3d at 762. Thus, Defendant's motion for summary judgment based on inadequate notice under the FMLA must fail.

Based on the foregoing, Defendant's motion for summary judgment with respect to Claim III is hereby denied.

### IV.

■ In Claim IV, Plaintiff alleges that Defendant intentionally engaged in extreme and outrageous conduct that caused him emotional distress.

■ Under Oklahoma law, recovery for the tort of intentional infliction of emotional distress is strictly limited to circumstances where the acts committed are so extreme or outrageous as to demand redress. As the Oklahoma Supreme Court stated,

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

*Breeden v. League Services Corp.*, 575 P.2d 1374, 1376 (Okla.1978) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Moreover, the events giving rise to the complaint must be judged within the context in which the events occurred. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla.1986) (stating that "[t]he salon of Madame Pompadour is not to be likened to the rough-and-tumble atmosphere of the American oil refinery").

In the present case, Plaintiff bases his claim for emotional distress on alleged harassment in the workplace. Co-workers allegedly referred to Mr. McClain as "crazy" and/or as "a lunatic" and talked about people on Prozac or going to the mental health facility in Vinita, Oklahoma. Plaintiff further alleges that his supervisor Dewayne Ross was "hateful" and asked him "what the f* * *'s wrong with you." Plaintiff alleges that he brought these comments to the attention of Defendant's management.

The Court finds that even assuming these allegations to be true, Plaintiff has not established the kind of conduct necessary to support a claim for intentional infliction of emotional distress under Oklahoma law. *See Eddy*, 715 P.2d at 77. Therefore, Defendant's motion for summary judgment as to Plaintiff's Claim IV is hereby granted.

### V.

In Claim V and Claim VI, Plaintiff alleges violations of the ADA and the Oklahoma

statutes prohibiting disability and handicap discrimination, respectively. At the hearing, the parties agreed for purposes of the instant motion and for trial that the elements of each claim are identical.

■ Plaintiff's claims for discrimination can be divided into two separate issues: (1) discriminatory discharge, and (2) hostile work environment. With respect to the former, the Court finds a genuine issue of material fact exists as to whether Plaintiff is "disabled" as defined by the ADA.[3] Thus, Defendant's motion for summary judgment as to Plaintiff's claim of employment discrimination based on his termination is hereby denied.

With respect to Plaintiff's claim of a hostile work environment, this Court is guided by the Supreme Court's decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), which addresses a hostile work environment claim under Title VII of the Civil Rights Act. *Id.* at 20–23, 114 S.Ct. at 370–71.[4] The Supreme Court held that language of Title VII prohibiting discrimination on the basis of race, color, religion, sex, or national origin "is not limited to 'economic' or 'tangible' discrimination." *Id.* at 21, 114 S.Ct. at 370. By including the phrase "terms, conditions, or privileges of employment" in the statute, 42 U.S.C. § 2000e–2(a)(1), Congress intended " 'to strike at the entire spectrum of disparate treatment ... in employment,' which includes requiring people to work in a discriminatorily hostile or abusive environment." *Id.* (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)).

■ Congress included precisely the same language in the ADA's general rule prohibiting discrimination in employment, stating: "No covered entity shall discrimi-

nate against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). The Court concludes that the use of this language in the ADA indicates that Congress intended for hostile work environment claims under the ADA to be governed by the same standard as that applied to similar claims under Title VII as articulated in *Forklift Systems. See, e.g., Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092, 1106–07 (S.D.Ga.1995); *Mannell v. American Tobacco Co.*, 871 F.Supp. 854, 860–61 (E.D.Va. 1994).

■ The standard articulated in *Forklift Systems* requires that:

> When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.

> ·     ·     ·     ·     ·

> "[M]ere utterance of an ... epithet which engenders offensive feelings in an employee," ... does not sufficiently affect the conditions of employment to implicate Title VII. *Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.* Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.* at 21–22, 114 S.Ct. at 370 (citations omitted) (emphasis added). Moreover, "[f]or comments to rise to the level of adverse

---

3. On the issue of Plaintiff's alleged disability, two distinct claims are made: (1) the Plaintiff is disabled under the ADA due to physical complaints that have a substantial impact on the major life activity of working and (2) Defendant "regards" Plaintiff as disabled due to his "major depression." *See* 42 U.S.C. § 12102(2). Both allegations under the ADA present a genuine issue of material fact, and thus, both survive Defendant's motion for summary judgment.

4. As a threshold issue, for Plaintiff to make a prima facie case of harassment under the ADA, the Plaintiff must be a qualified individual with a disability. For the purposes of the hostile work environment analysis herein, the Court assumes *arguendo* that Plaintiff has met this burden.

employment action, the conduct must be so egregious as to 'alter the conditions of employment.' " *Henry v. Guest Servs., Inc.*, 902 F.Supp. 245, 252 (D.D.C.1995) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 180, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989)). Both the objective and the subjective components of this test must be satisfied for a plaintiff to establish a hostile or abusive work environment. *See Howard v. Navistar Int'l Transp.*, 904 F.Supp. 922, 932 (E.D.Wis.1995).

 In the present case, Defendant's conduct that allegedly created a hostile work environment is recounted in section IV, above, as the basis for Plaintiff's claim for intentional infliction of emotional distress. Applying the standard articulated in *Forklift Systems,* the Court holds that the comments attributed to Plaintiff's co-workers and/or supervisor were neither severe nor pervasive so as to "alter the conditions of his employment." [5] "[C]ompared against an *objective* standard of reasonableness," these comments would not be considered hostile. *Howard,* 904 F.Supp. at 932 (emphasis added). Therefore, the Court concludes that the conduct and remarks did not create an environment so hostile as to constitute an adverse employment action under the ADA. Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim is hereby granted.

## VI.

In summary, Defendant's motion for summary judgment is hereby granted in part and denied in part. Specifically, Defendant's motion for summary judgment is hereby granted with respect to Claim I, Claim II, Claim IV. Further, to the extent that Claim V and Claim VI allege claims of hostile work environment, Defendant's motion for summary

judgment is hereby granted. Defendant's motion for summary judgment is hereby denied with respect to Claim III. Further, to the extent that Claim V and Claim VI allege claims of discriminatory discharge, Defendant's motion for summary judgment is hereby denied.

IT IS SO ORDERED.

---

5. The United States District Court for the District of Columbia addressed similar facts in *Henry.* There Plaintiff, who suffered from major depression and had once attempted to commit suicide, alleged that he was "subjected to jokes by management personnel concerning his depression," and that he "discover[ed] a cartoon poking fun at his disability [in his mailbox]." *Henry,* 902 F.Supp. at 251–52. The Court granted summary judgment to Defendant and held that "[a]s offensive as [this conduct] must have been for the

Plaintiff . . ., Plaintiff has presented no evidence that such conduct was so severe or pervasive as to alter the conditions of his employment." *Id.* at 252. Similarly, in *Howard,* Plaintiff "fail[ed] to introduce any evidence beyond his own bare allegations that he was subject to a pattern of taunting, humiliation and mistreatment by co-workers or that Navistar management was aware of any harassment that may have occurred." *Howard,* 904 F.Supp. at 932 (finding also that Plaintiff was referred to as a "wussy").