**Shirley A. EAGLIN, Plaintiff-Appellant,**

v.

**UNITED STATES of America, DEPARTMENT OF the ARMY, Defendant-Appellee.**

No. 85–4889
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 18, 1986.

Fazzio & Saitta, Vincent J. Saitta, Lafayette, La., for plaintiff-appellant.

Joseph S. Cage, Jr., U.S. Atty., Lawrence W. Moon, Jr., Asst. U.S. Atty., Lafayette, La., Dosite H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for defendant-appellee.

Before POLITZ, GARWOOD and E. GRADY JOLLY, Circuit Judges.

## OPINION

GARWOOD, Circuit Judge:

Plaintiff-appellant Shirley A. Eaglin appeals the dismissal of her Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, suit against the United States Army for lack of subject matter jurisdiction because the claim arose in a foreign country. We affirm.

### Facts and Proceedings Below

In January of 1982, Shirley Eaglin was a civilian dependent living on a United States Army base located in West Germany. Around January 7 of that year, Eaglin was

required to attend an exercise for dependents of military personnel at an Army installation in Wuerzburg, West Germany. While on her way to this exercise, Eaglin slipped and fell on a patch of what she claimed was "black ice"—a frozen combination of dirt, mud, pollutants, and moisture which is hard to detect—and injured her elbow. Immediately after this incident, Eaglin told a medical officer that she had slipped off a curb and that she had not seen any snow or ice in the area of her fall. An inspection before the fall had concluded that no ice was in the area.

Eaglin filed the instant claim in district court on May 7, 1984, and she alleged that the government negligently failed to inform her in the United States about the weather and climactic hazards she would face in West Germany, and negligently failed to instruct her in methods to discover or avoid any of these climactic hazards. Eaglin claimed in her petition that as a lifelong resident of Louisiana she was not aware of the hazards of "black ice" and that she should have been briefed on these hazards before she left the United States.

On October 15, 1985, the government moved to dismiss Eaglin's suit under, *inter alia*, Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, or, alternatively, under Fed.R.Civ.P. 56 for summary judgment. The district court granted the government's motion to dismiss for lack of subject matter jurisdiction on November 4, 1985, and judgment was entered. Eaglin appeals. .

### Discussion

The sole issue on appeal is whether the district court erred in dismissing Eaglin's suit under the FTCA for want of subject matter jurisdiction. We note that the FTCA is a limited waiver of the United States government's sovereign immunity in tort. Section 1346(b) of the FTCA provides, in relevant part:

"[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

However, section 2680(k) of the FTCA specifically exempts from the section 1346(b) waiver of sovereign immunity "[a]ny claim arising in a foreign country." For the purpose of determining FTCA jurisdiction under section 2680(k), a "foreign country" is a "territory subject to the sovereignty of another nation." *United States v. Spelar*, 338 U.S. 217, 70 S.Ct. 10, 11, 94 L.Ed. 3 (1949). In *Spelar*, the Supreme Court stated, "[T]hough Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to liabilities depending upon the laws of a foreign power." *Id.* 70 S.Ct. at 12. Consequently, with respect to negligence actions arising in a foreign country, the United States retains its sovereign immunity and no court has subject matter jurisdiction under the FTCA. 28 U.S.C. § 2680(k).

Eaglin urges, however, that a "headquarters claim" exception exists in the section 2680(k) jurisprudence under which the place of the accident or injury is not controlling for jurisdictional purposes. She asserts that jurisdiction is proper under the FTCA if a negligent "act or omission" occurred in the United States,[1] even if the "operative effect" of the act or omission took place in a foreign country. *See Beattie v. United States*, 756 F.2d 91, 96 (D.C. Cir.1984) ("[A]n FTCA claim may arise in the United States ... even though the act or omission had its 'operative effect' ... in

---

**1.** We note that under section 1346(b) the law to be applied is the "law of the place where the act or omission occurred." The place of loss is not necessarily controlling. *See Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

a foreign country."); *Sami v. United States*, 617 F.2d 755 (D.C.Cir.1979); *Leaf v. United States*, 588 F.2d 733 (9th Cir.1978). This Court has yet to address that issue. On the basis of her allegations that a negligent failure to warn or instruct occurred in the United States before she arrived in West Germany, Eaglin seeks to circumvent the mandatory jurisdictional exemption of section 2680(k) for claims arising in a foreign country.

It is unnecessary in the present case to determine whether this Court should recognize a "headquarters claim" exception,[2] because we find that even if the cases relied on by Eaglin correctly state the law, the district court's dismissal of her suit for lack of subject matter jurisdiction would nevertheless have been proper. We note that in each of these headquarters claims cases there is, at least on the surface, a plausible proximate nexus or connection between acts or omissions in the United States and the resulting damage or injury in a foreign country. For instance, in *Beattie*, the Court of Appeals for the District of Columbia held actionable under the FTCA the plaintiff's allegations of negligent training of air traffic controllers in the United States, despite the fact that the accident that was the basis of the suit actually occurred in Antarctica. 756 F.2d at 96. The *Beattie* decision, however, may be factually distinguishable from most other cases under section 2680(k) because the accident happened in Antarctica, where the court found there was no foreign law for section 2680(k) purposes. In *Sami*, jurisdiction was held to be established in a suit for false arrest where an Afghan economist was detained by the German police in Germany at the wrongful request, made from the United States, of the United States representative for Interpol. 617 F.2d at 757–758. Lastly, in *Leaf*, the court found jurisdiction on the plaintiff's theory of the negligent supervision of an alleged undercover narcotics agent who leased the plaintiff's airplane in the United States under false pretenses and subsequently destroyed it on a mission to Mexico. 588 F.2d at 735.

Unlike the above-cited cases, however, here there is no plausible proximate relationship between the alleged negligence in this case and the resulting damage in a foreign country. In her petition to the district court, Eaglin alleged, *inter alia:*

"8.

"That the plaintiff at no time received any formal training by the Department of the Army prior to her departure for West Germany. She received no training or information concerning the weather and climatic hazards she would face and instructing her in either discovering and/or avoiding any weather climatic hazards.

"9.

"Plaintiff received no information concerning preparation for the severe cold weather or severe cold weather hazards and conditions she would experience in West Germany. She received no such information despite the fact that a small briefing and pamphlet was provided to plaintiff prior to her departure for West Germany. The literature and briefing was received from the Department of the Army but neither the briefing nor the documentation discussed the hazardous weather conditions and how to prepare and cope with them. In particular, no mention was made of the hazardous condition known as 'black ice.' "

As the district court held, these rather general allegations of negligence simply do not

---

**2.** We note that the approach taken in cases like *Beattie* is not the only viable one. *See Beattie,* 756 F.2d at 106 (Scalia, J. dissenting) ("What makes the majority opinion in this case unique is that it does not reach these strange conclusions [one of which is the inapplicability of section 2680(k)] by sheer compulsion, but adopts them as the *preferred* interpretation of a statute that could readily be construed otherwise.") (emphasis in original). Thus alternatives exist to the majority approach in *Beattie* that merit consideration by this Court. We would further need to address the impact recent Supreme Court decisions might have in this area, *see* note 4, *infra.*

state a headquarters claim under any reasonable interpretation of that theory.[3]

First, we note that here, unlike the situation in *Sami*, there was no negligent act performed in the United States that directly caused an injury in a foreign country. Nor is Eaglin's plight similar to that of the plaintiff in *Leaf*, where the damaged property was leased under false pretenses in the United States, any supervision of the alleged agent would have been in the United States, and the alleged undercover operation was launched from the United States. Here, accepting for the moment Eaglin's rendition of the facts, there was a simple slip and fall accident on black ice in West Germany, an action in our view not proximately related to any precedent wrong in the United States. Additionally, the warnings and instructions sought by Eaglin would not require extensive or professional training at a school or other educational base, as was the case in *Beattie*, and we cannot qualitatively equate air traffic control instruction with warnings about walking on ice in the streets or sidewalks of West Germany. If black ice is peculiar to, or common in, West Germany, then the obvious place to warn the servicemen and their dependents of this danger is in West Germany, not in Louisiana. Neither common knowledge nor any of Eaglin's allegations support an inference that warnings about black ice should have been given *in the United States*. Further, Eaglin did not

claim that she was misadvised or mistrained. Nor did she allege that she was treated differently in any way from other civilian dependents. Instead, Eaglin simply made broad allegations of negligence about the Army's deficient training procedures for civilian dependents. We conclude that these allegations are insufficient to establish a "headquarters" claim when the relationship between the negligence in the United States and the foreign country where the injury or damage occurred is so strained and attenuated. Thus we hold that were we to adopt a "headquarters" exception to section 2680(k) for the foreign nation results of negligent training or supervision conducted in the United States, the district court would nevertheless not have jurisdiction to hear Eaglin's claim because the nexus between her claim and any act or omission in the United States is simply too tenuous and remote.[4]

### Conclusion

Having determined that Eaglin's claim arose in a foreign country as defined in section 2680(k) of the FTCA, we affirm the district court's dismissal of her action for want of subject matter jurisdiction.

AFFIRMED.

**3.** We note that a district court has the power to make factual findings decisive of jurisdiction. *See Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Thus the district court in deciding a motion challenging its own subject matter jurisdiction does not have to accept the jurisdictional allegations of a plaintiff as true. *Id.*

**4.** We note that the Supreme Court has recently indicated a willingness, in a related context, to limit the ability of a plaintiff to avoid jurisdictional issues under the FTCA by splitting a cause of action. *See United States v. Shearer,* —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (discussing section 2680(h) of the FTCA which states that sovereign immunity is not waived for cases "arising out of" assault or battery claims). The Supreme Court held that the jurisdictional exemption in section 2680(h) for assault and

battery also excepted from the FTCA's jurisdiction the negligent supervision of someone committing an assault or battery because "[n]o one [in Congress] suggested that liability would attach if the Government negligently failed to supervise such an assailant." *Id.* 105 S.Ct. at 3042. Thus "it is inescapable that the ... [jurisdictional exemption] is broad enough to encompass claims sounding in negligence." *Id.* at 3043. We find the reasoning in *Shearer* concerning the "arising out of" language of section 2680(h) to be at least arguably applicable by analogy to the "claims arising in a foreign country" language of section 2680(k), and thus we are reluctant, especially on the facts of this case, to allow jurisdiction on a claim alleged to have arisen in the United States which is clearly ancillary to what is plainly the ultimate claim that indisputably arose in a foreign country.