**Eleanor SCHLUTER, Plaintiff,**

v.

**INDUSTRIAL COILS, INC., Defendant.**

No. 95–C–660–C.

United States District Court,
W.D. Wisconsin.

June 14, 1996.

Charles Barnhill, Davis, Miner, Barnhill & Galland, Madison WI, for Eleanor Schluter.

Thomas P. Heneghan, Michael, Best & Friedrich, Madison WI, for Industrial Coils, Inc.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary and injunctive relief brought pursuant to the Americans with Disabilities Act, 42 U.S.C.

§§ 12101–12213. Plaintiff contends that she is a disabled person under the act as a consequence of her insulin-dependent diabetes, which has affected her eyesight. She alleges that defendant discriminated against her in violation of the act by removing her from her job as a supervisor because she could not pass a vision test and by failing to reasonably accommodate her disability by modifying the vision requirement or her job duties. Both parties have moved for summary judgment. Defendant maintains that plaintiff cannot meet her burden of proving 1) she is disabled under the act; 2) she could perform the essential functions of her position at the defendant company with or without reasonable accommodation; and 3) defendant discriminated against her because of a disability. Plaintiff argues that she is entitled to summary judgment because she is disabled as a matter of law, because defendant cannot carry its burden of showing that the vision test used to exclude her from her position was job-related and consistent with business necessity and because defendant failed to accommodate her disability. I conclude that defendant is entitled to summary judgment because plaintiff has failed to adduce facts sufficient to carry her threshold burden of showing that she is disabled and therefore entitled to the protections of the act. This conclusion makes it is unnecessary to address any of the additional arguments made by the parties.

For the purpose of deciding the motions for summary judgment, I find from the parties' proposed findings of fact that there is no genuine dispute with respect to the material facts set out hereafter. In determining the undisputed facts, I have considered only those factual propositions that complied with this court's *Procedures To Be Followed on Motions for Summary Judgment,* a copy of which was provided to each of the parties on November 8, 1995. I did not consider factual material in the parties' reply briefs that was not proposed as fact. *See Procedures,* cover page at # 5: "Factual assertions contained in a brief, even if supported with citation to the record, will not be considered by the court."

## UNDISPUTED FACTS

### A. *Parties*

Defendant Industrial Coils, Inc., employs approximately 150 people in the manufacture of magnetic windings for electrical coils and transformers. Plaintiff Eleanor Schluter was employed by defendant from 1949 until 1994, becoming Supervisor A in defendant's finishing department in 1981. She continued in that capacity until January 1994, when defendant removed her from her position.

### B. *Plaintiff's Diabetes*

In the late 1970's, plaintiff learned that she had insulin-dependent diabetes. Even on insulin, plaintiff has suffered occasionally from insulin reactions caused by low blood sugar, including daytime weakness, dizziness, nausea and loss of sleep from alternating sweats and chills. Although in most cases plaintiff has been able to resolve these episodes by eating something to boost her blood sugar, she has required hospitalization on more than one occasion. Plaintiff's diabetes did not prevent her from continuing to work for defendant. She wore a Medical Alert bracelet and explained her condition to her foremen so that they would know how to help her in the event of a severe insulin reaction, but she never suffered such a reaction at work.

Beginning in approximately 1990, plaintiff began to experience difficulty with her eyesight as a result of her diabetes. Defendant was aware that plaintiff's vision problems were related to her diabetes. Plaintiff had several laser treatments and saw an eye surgeon in Madison several times a year. Although plaintiff holds a valid driver's license, her impaired vision prevents her from driving in heavy traffic or for long distances. She is unable to read for more than 30 to 45 minutes at one time. On December 17, 1993, plaintiff's far vision tested as 20/50 and 20/60 and her near vision tested as 20/40 and 20/50. On December 21, 1993, plaintiff's far vision tested as 20/30 and 20/60 and her near vision tested as 20/50 and 20/70.

Plaintiff's eyesight is stable at present and her diabetes has remained stable over the last seven years. Plaintiff's eyesight restricts her ability to perform production work that requires focused vision on small objects

over an eight to ten-hour period. Since leaving her employment with defendant, plaintiff has worked part-time in food service at the Rock Springs Elementary School and has applied for at least ten to 12 positions with a wide range of businesses.

### C. Plaintiff's Duties as Supervisor in Finishing Department

According to Joel Kasten, plaintiff's foreman from 1989 until the end of her employment, most of plaintiff's day was spent showing the production workers whom she supervised how to assemble the various coils the finishing department produced and then spot-checking their work. On any given day, the finishing department production workers produced several hundred to many thousands of coils under plaintiff's supervision. It was plaintiff's responsibility to spot-check approximately one percent of these. Plaintiff performed only minimal production work.

Plaintiff worked in her department for 44 years. No one else is more familiar with the workings of that department. Plaintiff could perform all of the tasks listed on her job description. When necessary, she compensated for her vision impairment by the use of an illuminated magnifier stationed at her work table. Kasten knew that plaintiff used a magnifier at times and he had no problem with her doing so.

### D. Plaintiff's Performance

Kasten cannot recall ever expressing any concern either verbally or in writing that plaintiff's vision problems might interfere with her ability to supervise her department until after plaintiff's termination. In 1992 and 1993, Kasten gave plaintiff favorable written evaluations of her job performance, including the rating of "exceptional" in several evaluation categories. These evaluations were approved by plant manager Dick Marsich.

Kasten believes that plaintiff's vision difficulties interfered with both her ability to inspect the work of the employees under her supervision and her ability to work with some of the materials used in defendant's products. However, he never identified any such problems in plaintiff's written evalua-

tions and he cannot recall ever discussing such problems with plaintiff. He remembers only one specific occasion on which a quality assurance person brought back a part with an improperly soldered joint that plaintiff had checked and cannot recall who the quality assurance was or the year in which the incident occurred. He did not document the problem at the time or discuss it with plaintiff.

### E. The Vision Test and Plaintiff's Removal from Her Job

Since 1985, defendant has subcontracted to corporations that hold United States government contracts. In 1990, defendant entered into a contract with a government contractor, Woodward Governor, which informed defendant that the federal government had imposed mandatory Department of Defense specifications upon it. (*Military Standard, Standard Requirements for Soldered Electrical and Electronic Assemblies, MIL–STD–2000*). In 1992 or 1993, following a compliance audit conducted by Woodward Governor, Woodward Governor required that defendant's employees working on its products comply with the Military Standards, which apply to component products used by the government in equipment such as military aircraft, radar-detecting missiles and the nuclear power safety system in nuclear-powered submarines. Compliance with the Military Standards ensures that the products operate safely.

Defendant required that all its employees involved in soldering meet the visual acuity requirements of the Military Standards, including inspectors and supervisors. On December 17, 1993, plaintiff took the required visual acuity examination. She failed to meet the required standard although she used prescription lenses as permitted under the standards. She was not offered the opportunity to use a magnifier. Defendant provided individuals who did not pass their first vision test an opportunity to take the test again within 60 days so as to allow them time to obtain new or renewed prescription lenses. Plaintiff took and failed a second visual acuity examination on December 21, 1993.

On January 7, 1994, plaintiff's supervisor, Joel Kasten, and defendant's Director of Per-

sonnel, Leo Daly, met with plaintiff to inform her that she would be removed from her supervisor position. Kasten and Daly asked plaintiff whether there were any jobs, other than that of supervisor, that she might be able to perform where she could use an illuminated magnifying glass as a possible accommodation to her vision. They suggested the possibility that plaintiff could be reassigned to a finishing or sanding position. Plaintiff explained that she could not think of any other jobs she could do because looking through a magnifying glass for eight hours a day would be too difficult. At the end of the meeting, plaintiff indicated to Daly and Kasten that she would take the weekend and two additional vacation days to think about whether there were any other jobs that she felt she could perform. Plaintiff never advised Daly or Kasten or anyone else at the company of any jobs she could perform. She never asked for any accommodation of her visual difficulty.

On January 11, 1994, plaintiff discussed with Daly whether she should take a lay-off. Plaintiff did not tell Daly whether she had thought of any other jobs she thought she could perform but did ask whether she could get her supervisor position back if she could pass the vision test. Daly responded that defendant would address her return to the supervisor position if she was able to pass the test. After January 11, 1994, plaintiff underwent periodic eye examinations by her personal physician, but she never submitted the results of any of the examinations to defendant. After the January 7, 1994 meeting with Kasten and Daly, plaintiff did not discuss any further accommodation of her visual difficulty.

Plaintiff informed defendant of her intent to go on lay-off status on or about January 11, 1994. She resigned her employment with defendant effective April 1, 1994. In plaintiff's termination of employment form, completed in April of 1994, Kasten wrote that plaintiff was not recommended for re-employment by defendant in any job because her "poor vision extremely limits ability." At the time Kasten made this assessment he was uncertain about the extent of plaintiff's visual ability and therefore questioned whether there was any job with the defendant company that plaintiff could perform. Kasten's recommendation was based on his own perception of plaintiff's visual impairment at that time. He had no scientific basis for his assessment of plaintiff's vision and he did not know whether plaintiff could solve any problems caused by her impairment with the use of a magnifier.

On approximately November 3, 1994, plaintiff filed a discrimination complaint with the Wisconsin Equal Rights Division, alleging that she had been discriminated against on the basis of a disability. On approximately July 20, 1995, plaintiff obtained a Notice of Right to Sue from the Equal Employment Opportunity Commission. On approximately September 15, 1995, plaintiff filed the complaint in this action.

## OPINION

Title I of the ADA prohibits covered entities from discriminating in employment related decisions against qualified persons with disabilities because of the disability. 42 U.S.C. § 12112(a). The act protects only those persons who can establish that they are disabled within the meaning of the statute. "To survive a defendant's summary judgment motion, an ADA plaintiff must meet the threshold burden of establishing that [s]he is disabled under the statute." *Howard v. Navistar International,* 904 F.Supp. 922, 927 (E.D.Wis.1995) (citing *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1454 (7th Cir.1995)). Under the act, "disability" is defined as:

1. a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

2. a record of such an impairment; or

3. being regarded as having such impairment.

42 U.S.C. § 12102(2). Plaintiff seeks to establish that she is disabled under the first and third prongs of the act's disability definition: substantial limitation of major life activity and "regarded as disabled."

## A. Substantial Limitation of Major Life Activity

It is undisputed that plaintiff has insulin-dependent diabetes, that is, her body requires insulin to help her regulate her blood sugar levels, but it is disputed vigorously whether her diabetes meets the first definition of disability by substantially limiting any of her major life activities. To be considered substantially limiting, the impairment must be a "significant" restriction on a major life activity. *Roth,* 57 F.3d at 1454; 29 C.F.R. § 1630.2(j)(1) ("substantially limits" defined in part as "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to" an average person). "Major life activities" are defined as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Roth,* 57 F.3d at 1454 (citing 29 C.F.R. § 1613.702(c)).

The Equal Employment Opportunity Commission's interpretive guidelines provide that "a diabetic who without insulin would lapse into a coma would be substantially limited because the individual cannot perform major life activities without the aid of medication." 29 C.F.R. pt. 1630 App. § 1630.2(j). This conclusion appears to rest upon the EEOC's reasoning, noted in a later portion of the section, that "[t]he determination of whether an individual is substantially limited in a major life activity must be made ... without regard to mitigating measures such as medicines, or assistive or prosthetic devices." *Id.*

The parties dispute both whether plaintiff's evidence brings her within the EEOC example she cites and whether the EEOC is correct that the disability inquiry must be made without consideration of the effects of medicine. Defendant contends that although plaintiff proposes as fact that she would fall into a coma without insulin, the evidentiary material she has marshaled does not support such a claim. Therefore, defendant argues, plaintiff's evidence does not bring her within the EEOC example of a diabetic who without insulin *would fall into a coma.* Defendant argues that requiring plaintiff to show what would happen to her

without insulin is consistent with the court's holding in *Roth,* 57 F.3d 1446, that the disability inquiry should be undertaken on an individual, case by case basis. *Id.* at 1454 (disability determination is an individualized inquiry) (citing *Byrne v. Board of Education,* 979 F.2d 560, 564 (7th Cir.1992)); *see also Ennis v. National Ass'n of Business & Educational Radio,* 53 F.3d 55, 60 (4th Cir.1995) (requirement that disability determination be made on case by case basis precludes any "laundry list" of per se disabilities); *Deckert v. City of Ulysses,* 1995 WL 580074 at \*7, 4 AD Cases 1569 (D.Kan. Sept. 6, 1995) (EEOC guidelines invalid to the extent they alter statutory definition of disability by creating a "checklist" of approved disabilities). Defendant's argument is too restrictive. It is generally understood that an insulin-dependent diabetic would be likely to suffer a coma or worse if unable to administer insulin as needed. *See* 4 *Ausman & Snyder's Medical Library* § 5:139(a) (1989) (insulin-dependent diabetes "requires patients to use insulin injections to prevent death"). Viewing the evidence in a light most favorable to the non-movant on this issue, as I must, I conclude that the undisputed fact that plaintiff suffers from insulin-dependent diabetes brings her within the EEOC example.

Therefore, the crucial determination becomes whether the EEOC guidance is correct that the disability inquiry should be made without regard to the ameliorative effects of medication. The EEOC's guidance is not binding on the court. *See, e.g., Coghlan v. H.J. Heinz Co,* 851 F.Supp. 808, 812 (N.D.Tex.1994) (EEOC guidance not a binding regulation but simply a statement of what the agency thinks the statute means). Recognizing this, plaintiff notes that the Court of Appeals for the Seventh Circuit has cited the EEOC's guidelines with approval in *Roth,* 57 F.3d at 1454. Plaintiff also cites several decisions in which courts have applied the EEOC guidelines and concluded that an insulin-dependent diabetic is disabled under the act. *Pater v. Deringer Manufacturing Co.,* 1995 WL 530655 at \*4, 4 AD Cases 1840 (N.D.Ill. Sept. 7, 1995) (diabetic disabled because without medication diabetes is life-limiting); *Sarsycki v. United Parcel*

*Service,* 862 F.Supp. 336, 340 (W.D.Okla. 1994) (without insulin plaintiff would be unable to perform major life functions).

■ Although agency interpretations are to be given deference, *see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), in this instance the EEOC's interpretation is in direct conflict with the language of the statute that requires plaintiffs in ADA cases to show that an impairment "substantially limits" their lives. 42 U.S.C. § 12102(2)(A). *See Public Employees Retirement System v. Betts,* 492 U.S. 158, 171, 109 S.Ct. 2854, 2863–64, 106 L.Ed.2d 134 (1989) ("[O]f course no deference is due to agency interpretations at odds with the plain language of the statute itself."). If an insulin-dependent diabetic can control her condition with the use of insulin or a near-sighted person can correct her vision with eyeglasses or contact lenses, she cannot argue that her life is substantially limited by her condition. To say that a person who needs insulin or eyeglasses is disabled in fact is to read out of the act's first definition of disability the requirement that it applies only to those persons who are "substantially limited" in major life activities. *See Coghlan,* 851 F.Supp. at 813 (EEOC's conclusion that plaintiff's limitation be considered without regard to his use of insulin "at odds" with clear statutory language of act requiring substantial limitation).

■ As to plaintiff's contention that the EEOC guidelines should be followed by this court because the Court of Appeals for the Seventh Circuit cited them with approval in *Roth,* 57 F.3d at 1454, close examination of the court's opinion refutes the contention. In *Roth,* the plaintiff was a doctor who had been excluded from a post-graduate residency program because of a vision impairment. *Id.* The evidence before the court was that the plaintiff was legally blind in one eye but that his eye impairment had been corrected to some extent by the use of eyewear. *Id.* at 1455. The court did not consider whether plaintiff was substantially limited without regard to his corrective eyewear. In fact, the court pointed to testimony in the record of an expert, who commented on plaintiff's visual ability *with* use of corrective eyewear. *Id.* at 1455 ("Dr. Parmet further noted that *while [plaintiff's] condition is not completely correctable through the use of glasses or other means,*" the plaintiff could function well in most medical specialties) (emphasis added). Nowhere in the opinion did the court assess the plaintiff's visual abilities without regard to his use of corrective eyewear or other mitigating measures. The court of appeals simply set out the EEOC guidance in order to emphasize that "the mere use of a mitigating measure does not automatically prove the presence of a disability" because the disability inquiry is individualized in nature. *Id.* at 1454. In this respect, I agree with defendant that the "mere use" of a medicine such as insulin does not establish a per se disability.

■ Plaintiff must show that her diabetes substantially limits her in a major life activity by showing that it affects her in fact, rather than how it would affect her hypothetically if she were unable to obtain insulin. Plaintiff has tried to do this by asserting that her insulin reactions and vision limitation demonstrate a substantial limitation of life activities. In an affidavit, plaintiff avers that she suffers insulin reactions occasionally that may include weakness, dizziness, nausea, chills and loss of sleep and that she has required hospitalization on more than one occasion to deal with an insulin reaction. Plaintiff notes also that she has impaired eyesight as a result of her diabetes that limits her ability to drive a car in heavy traffic or for long distances, limits her ability to read for more that 30 to 45 minutes at a time and has required several laser treatments.

■ Defendant objects to the admissibility of the affidavit on the ground that it conflicts with the deposition testimony in which plaintiff stated that the only medical problem she was experiencing was vision difficulty. *Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir.1996) (deposition testimony cannot be overcome with subsequent affidavit). At the deposition, defendant asked plaintiff: "Currently, right now, are you suffering from any medical conditions or complaints?" Plaintiff's answer was that her

only medical problem was her eyes. It is not clear that plaintiff's affidavit contradicts this answer. Plaintiff could have inferred reasonably from the questioner's use of the terms "currently" and "right now" that defendant was asking about any problems she might be experiencing as she was being deposed.

■ Although the evidence of insulin reactions is admissible, I agree with defendant that it does not suffice to put into dispute plaintiff's claim that she is substantially limited in a major life activity. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (genuine issue of fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; summary judgment may be granted if the evidence is not significantly probative). Plaintiff's evidence of insulin reactions is too vague to be significantly probative. She does not say how often she experiences nausea, weakness, dizziness and sleeplessness or how these conditions are any worse for her than for other people. *See Daley v. Koch,* 892 F.2d 212, 214 (2d Cir.1989) (commonplace conditions do not amount to an impairment under analogous Rehabilitation Act) (citing *Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986)). In fact, plaintiff does not dispute that her diabetes has remained stable over the last seven years and that she has never had a severe insulin reaction at work. Although plaintiff's evidence that she has been hospitalized for insulin reactions might suggest a life-limiting impairment if the hospitalizations were frequent or lengthy or for life-threatening reactions to her condition, she does not say how often she has been hospitalized, how long the hospitalization lasted or what symptoms caused her to be hospitalized. Without this additional evidence, a reasonable jury could not conclude that plaintiff is substantially limited in a major life activity.

Even assuming that plaintiff's evidence of insulin dependence and insulin reactions were sufficient to create a genuine factual dispute, plaintiff is contending that defendant failed to reasonably accommodate her vision impairment, not that defendant failed to accommodate her need for insulin or her insulin reactions. Plaintiff argues that the court cannot consider plaintiff's eyesight as separate from her diabetes in light of the holding in *Vande Zande v. Wisconsin Dept. of Administration,* 44 F.3d 538, 544 (7th Cir.1995) (an "intermittent impairment that is a characteristic manifestation of an admitted disability is . . . a part of the underlying disability" and covered under the act). In *Vande Zande,* the plaintiff was a paraplegic whose paralysis caused her to develop pressure ulcers periodically, requiring her to stay at home for long periods of time. *Id.* at 543. The court rejected the employer's argument that it had no duty to accommodate plaintiff's ulcers because they were an intermittent, episodic impairment similar to a broken leg and therefore not entitled to protection under the act. *Id.* at 544.

■ *Vande Zande* is distinguishable from this case for several reasons. Unlike plaintiff's eyesight limitation, which is continuous, the issue before the court in *Vande Zande* was the intermittent or temporal nature of the employee's pressure ulcers. The court focused on the fact that many diseases, such as the AIDS virus, may create intermittent problems that might not be considered a disability under the act if viewed in isolation, but would show a substantial limitation of a major life activity if viewed over an extended period of time. *Id.* Put another way, the court concluded that when an impairment creates smaller intermittent impairments, the disability focus should be on the effects of the overall impairment. Such a focus allows the court to expand the scope of the disability inquiry, which is appropriate in a situation in which the overall disability creates sporadic impairments that may create a substantial limitation when viewed cumulatively. In this case, however, plaintiff's eyesight limitation is continuous in nature. Therefore, it is unnecessary to focus on the overall cause of that limitation in order to expand the temporal scope of the disability inquiry. For example, if a person had a disease in which he suffered intermittent broken bones and was terminated because he missed work to treat these injuries, *Vande Zande* would require the court to focus on the person's overall disease and not just on the individual instanc-

es of broken bones. Of course, the employer would have to know that the broken bones were associated with the overall disease. *Vande Zande*, 44 F.3d at 544 (sporadic impairment must be a "characteristic manifestation" of overall disability); *cf. Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932–34 (7th Cir.1995) (employer not liable under ADA for termination of employee where it had no knowledge that the employee's problems at issue were caused by disabling condition; employee not fired "because of" his disability). Analogizing to our case, if plaintiff's insulin reactions affected her at work occasionally and defendant refused to accommodate them, *Vande Zande* would require the court to consider plaintiff's insulin-dependent diabetes as her disability, taking into account the cumulative effect of multiple insulin reactions rather than focusing on individual reactions.

■■■■ Moreover, where the impairment at issue is related to or caused by a disease or other impairment, *Vande Zande* does not obviate the requirement that the impairment at issue be a substantial limitation of a major life activity. Lori Vande Zande's paralysis made her vulnerable to pressure ulcers, the treatment of which required stays at home for several weeks. *Vande Zande*, 44 F.3d at 543. The cumulative effect of the bouts of ulcers constituted a substantial interference with life activities independent of the plaintiff's paraplegia. I do not read *Vande Zande* as creating a type of job tenure for an employee with slightly impaired eyesight simply because she suffered insulin dependence and insulin reactions having no relation to the adverse employment action, while leaving unprotected employees with similar vision problems resulting from aging or generally poor eyesight. An ADA plaintiff must show that the physical or mental impairment that led to her adverse employment action is substantially limiting in order to establish that she is disabled under the first prong of the act's disability definition.

■■■■ Plaintiff alleges only that defendant removed her from her supervisor position because of her limited eyesight. Thus, plaintiff's evidence of her insulin dependence and her insulin reactions is not relevant to the disability inquiry in this case. In order to establish that she is entitled to protection and reasonable accommodation under the act, plaintiff must show that her eyesight limitation is a disability under the act, but no reasonable jury could conclude that a person with plaintiff's ability to drive and read with vision corrected to between 20/40 and 20/70 for near vision and between 20/30 and 20/60 for far vision is disabled under the ADA. *See Walker v. Aberdeen–Monroe County Hospital*, 838 F.Supp. 285, 288 (N.D.Miss. 1993) (plaintiff with vision corrected to 20/30 not handicapped under analogous Rehabilitation Act where plaintiff alleged only temporary limitation on driving) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993)).

■■■■ Plaintiff asserts that her poor vision substantially limits her in the major life activity of working but she has not shown that her vision works a " 'significant restrict[ion] in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.' " *Howard*, 904 F.Supp. at 928 (quoting 29 C.F.R. § 1630.2(j)(3)(I)). The inability to perform a particular job for a particular employer is insufficient: a plaintiff must show that she is "precluded from working generally." *Id.* (citing *Byrne*, 979 F.2d at 565)). "The court must ask 'whether the particular impairment constitutes for the particular person a significant barrier to employment,' " *Byrne*, 979 F.2d at 565 (quoting *Forrisi v. Bowen*, 794 F.2d at 933), after considering such factors as " 'the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training.' " *Id.* (quoting *Jasany v. United States Postal Service*, 755 F.2d 1244, 1249 (6th Cir.1985)); *see also Howard*, 904 F.Supp. at 928 (same).

Plaintiff alleges that her impaired eyesight limits her from performing all non-supervisory production work at the defendant company that requires focused vision on small objects for eight to ten-hour periods, but she has supported her allegation with nothing

but her own affidavit in which she declares her belief that she is unable to perform these jobs. Although plaintiff contends that defendant has conceded that she is unable to perform any productions jobs at defendant company, the deposition testimony of Joel Kasten that she offers in support of this contention does not establish that he agrees that plaintiff would be unable to perform any production work. In the portion of Kasten's deposition testimony introduced as fact, Kasten states that he is unable to comment on plaintiff's ability to perform various types of production work because of his lack of knowledge about plaintiff's visual capability. The reasonable inference from plaintiff's evidence is that she is unable to perform a narrow range of production work that involves focused vision on tiny objects; it is not reasonable to infer that plaintiff's vision limits her employment in a broad range of production work dealing with larger items. *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir.1995) (welder's arm impairment restricting ability to climb not a disability because it affects only a narrow range of welding jobs).

Moreover, it is plaintiff's burden to show that she is substantially limited in working as compared to someone with similar education, experience and background. It is undisputed that plaintiff performed only minimal production work at her supervisor position. She has proposed no facts regarding her job training, skills, abilities or expectations other than the facts that she worked at defendant company for 44 years and held a supervisory position for fourteen years. Although plaintiff referred to her skills and training in her reply brief, the references could not be considered, both because defendant had not had an opportunity to respond to them and because they did not comply with the court's requirement that all facts be proposed in the form set out in the court's *Procedures to be Followed on Summary Judgment.* Without such evidence, it would be sheer speculation to conclude that plaintiff's vision substantially limits her ability to work as compared to someone with similar skills and experience.

Plaintiff did not propose any facts regarding the number and type of jobs available to her in her geographic area from which she believes she is disqualified by her limited vision, although she mentions such data in a footnote in her reply brief. Courts in this circuit disagree whether the lack of demographic data is fatal to a plaintiff's case on summary judgment. *Compare Howard,* 904 F.Supp. at 929 (plaintiff who fails to adduce evidence of the number and type of jobs in his geographic area from which he is disqualified because of his impairment "cannot survive a defendant's motion for summary judgment"), *with Leslie v. St. Vincent New Hope, Inc.,* 916 F.Supp. 879, 885 (S.D.Ind.1996) (plaintiff need not adduce job market data in geographic area to survive motion for summary judgment where evidence shows her impairment substantially limits employment opportunities of someone with her limited education and lack of transferable skills). It is unnecessary to choose sides on this issue. Even if I concluded that a lack of such evidence is not fatal to plaintiff's claim, her evidence suggests at best that she is limited only in a narrow range of production jobs and says nothing about her transferable skills and education. Plaintiff's lack of job-related demographic evidence is another indication of her inability to raise a triable issue of disability.

In sum, a reasonable jury could not conclude that plaintiff's vision disqualifies her from a broad range of job opportunities, thereby limiting her employment generally. Plaintiff has failed to carry her threshold burden of demonstrating that she is restricted significantly in working.

### B. *Regarded as Disabled*

Plaintiff's alternative position rests on the third prong of the disability test, "regarded as disabled." She contends that she is disabled under the act because defendant perceived her eye impairment as one that substantially limited her in the major life activity of working. As discussed above, the ADA's definition of disability includes persons who have impairments that do not amount to substantial limitations but who are viewed as substantially limited by their employer. 42 U.S.C. § 12102(2)(C). This provision is designed to protect against erroneous stereotypes some employers hold re-

garding certain physical or mental impairments that are not substantially limiting in fact. *Vande Zande,* 44 F.3d at 541 ("regarded as disabled" element of act consistent with preamble of act "in which people who have physical or mental impairments are compared to victims of racial and other invidious discrimination"); *see also School Board of Nassau County, Florida v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987) ("regarded as" element of analogous Rehabilitation Act represented Congressional "acknowledge[ment] that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment").

 In plaintiff's view, defendant "regarded her" as substantially limited in working because it perceived her as unable to perform her position as a supervisor after she failed to satisfy the vision requirement. This is insufficient. In order to establish a disability under the "regarded as" provision, plaintiff must show that the perceived impairment is a substantial limitation on a major life activity. *See, e.g., Howard,* 904 F.Supp. at 930 (employer must regard employee's impairment as substantially limiting); *Flasza v. TNT Holland Motor Express, Inc.,* 159 F.R.D. 672, 678–79 (N.D.Ill.1994) (plaintiff not disabled under "regarded as" test where plaintiff failed to show that impairment as perceived would substantially limit a life activity). As discussed above, the inability to work at the particular job of one's choice is not a substantial limit on "working" under the act. *Byrne,* 979 F.2d at 567 ("Courts have uniformly held 'that an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job.' ") (quoting *Forrisi,* 794 F.2d at 934). Plaintiff cannot prove that defendant viewed her as disabled by showing only that defendant perceived her as unable to perform a single requirement of her supervisor position, namely, passing the vision test. *See, e.g., Howard,* 904 F.Supp. at 930 (employee not regarded as substantially limited in working where employer did not assign employee to a particular job); *Marschand v. Norfolk &* *Western Railway Co.,* 876 F.Supp. 1528, 1541 (N.D.Ind.1995) (employee not regarded as limited in working where viewed by employer as no longer able to work in train service; inability to work in that field not the same as a significant restriction on employee's ability to work generally); *Cook v. State of Rhode Island Dept. of MHRH,* 10 F.3d 17, 26 (1st Cir.1993) (making distinction between employer rejection based on job-specific perception and rejection based on more generalized perception that employee is impaired in way that would limit employment generally); *cf. EEOC v. Chrysler Corp.,* 917 F.Supp. 1164, 1168–69 (E.D.Mich.1996) (employer regarded employee as disabled where it perceived high blood sugar as impairment that would affect employee's ability to find work across the spectrum of similar jobs; type of work restrictions put on employee demonstrates employer's perception of employee as incapable of working in broad range of jobs). Plaintiff's contention that defendant perceived her as unable to perform her supervisor position because she could not pass the vision requirement of the military standards does not establish a perceived impairment that would limit plaintiff from qualifying for a broad range of supervisory or other jobs. *See Joyce v. Suffolk County,* 911 F.Supp. 92, 96–97 (E.D.N.Y.1996) (employer rejection based on perception that applicant unable to satisfy unique, job-specific requirement of police work does not establish perception that applicant would be excluded from large class of jobs).

Plaintiff fares no better with her remaining argument that defendant removed her from her supervisor position and failed to accommodate her because it regarded her vision impairment as substantially limiting her in working generally. In support of her contention that defendant perceived her vision impairment as disabling her from any production job with defendant, plaintiff refers again to the deposition testimony of Joel Kasten. However, Kasten testified only that he was unable to comment whether plaintiff could do certain types of production work with her vision, not that he believed she was actually unable to do such production work.

Plaintiff also refers to her termination of employment form completed by Kasten in April 1994, in which Kasten stated that he would not recommend plaintiff for re-employment with the company in any capacity because of his belief that her vision severely limited her abilities. Thus, plaintiff contends, a reasonable inference exists that defendant removed her from her supervisor position and failed to reasonably accommodate her because it regarded her vision as an impairment that would limit her employment opportunities generally.

■■■■ Plaintiff's argument is unpersuasive when all of the undisputed facts are considered. In the January 1994 meeting, Kasten and Daly informed plaintiff that she was removed from her supervisor job and asked her whether there were any other positions at the company that she thought she would be able to perform. Plaintiff said that she could not think of any other jobs at the defendant company that she could perform even with the use of a magnifying glass because of her vision impairment. She never advised defendant of any jobs she could perform at the company, but resigned her employment on April 1, 1994. Kasten's and Daly's offer of other positions belies plaintiff's assertion that defendant removed her from her supervisor position because it regarded her vision as limiting her employment opportunities generally. The offer, plaintiff's subsequent rejection of it and her resignation suggest that Kasten's perception of plaintiff's vision impairment was not involved in her removal from her supervisory job. Indeed, the undisputed facts suggest that Kasten's April 1994 perception of plaintiff's vision impairment was based not on any invidious stereotype he may have had regarding her vision impairment, but on plaintiff's failure to respond to his inquiry about other work at the company and her expressed belief that she would be unable to perform any other job. To justify a finding that defendant regarded her as limited in working, plaintiff must adduce evidence that defendant made an independent judgment that she had an impairment limiting a wide range of employment opportunities. *Byrne,* 979 F.2d at 567 (employer did not regard plaintiff as substantially limited in working where "it treated her as having an impairment because she so defined herself"); *Howard,* 904 F.Supp. at 930 (plaintiff "has produced no evidence that [defendant] regarded his impairment as any more limiting than was represented to the company by [plaintiff] himself . . .; no evidence that the company ever restricted [plaintiff] from operating any machinery because it independently made a judgment that he was unable to operate a machine because of his tendinitis"); *Marschand,* 876 F.Supp. at 1542 (employer "assumption" that employee was unable to work on or around trains or in high stress situations was "understandable given that that is how [the employee] defined himself"); *cf.* 29 C.F.R.App. § 1630.2(1) (individual regarded as disabled where employer makes employment decision because of "myth, fear or stereotype"). Where, as here, the perception of an inability to work at a broad range of positions comes not from the employer's own mistaken perceptions but from the information or lack of information provided by the employee herself, the employee has not shown she is "regarded as" disabled under the act.

Plaintiff has failed to adduce the facts necessary to put into dispute her threshold burden of establishing that she is disabled under the act. Viewing the evidence she has adduced in the light most favorable to plaintiff, as I must, I conclude that a reasonable jury could not find plaintiff disabled under the act. Accordingly, defendant's motion for summary judgment will be granted. *See Howard,* 904 F.Supp. at 927 (proper to grant summary judgment without considering whether plaintiff is qualified to perform essential functions of job or whether defendant discriminated against plaintiff when plaintiff fails to establish disability under the act).

## ORDER

IT IS ORDERED that plaintiff Eleanor Schluter's motion for summary judgment is DENIED and the motion for summary judgment of defendant Industrial Coils, Inc., is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.