Walter WALKER, Plaintiff,

v.

**ABERDEEN–MONROE COUNTY HOSPITAL, Defendant.**

No. 1:92CV125–S–D.

United States District Court, N.D. Mississippi, E.D.

Dec. 9, 1993.

---

Jim Waide, Luther C. Fisher IV, Waide Law Office, Tupelo, MS, for plaintiff.

Robert H. Faulks, Ralph E. Pogue, Holcomb, Dunbar, Connell, Chaffin and Willard, Aberdeen, MS, for defendant.

## OPINION

SENTER, Chief Judge.

In this case, plaintiff charges that his employment with the defendant hospital was terminated solely because of his alleged handicap in violation of the Rehabilitation Act of 1973. Presently before the court are defendant's motions for summary judgment and to strike plaintiff's affidavit and plaintiff's motion for review of the magistrate judge's ruling striking his jury demand.

## FACTS

The plaintiff, Walter Walker, was first diagnosed with the disease of sarcoidosis[1] in October, 1987, while serving in the United States Air Force. He was discharged in June, 1988, because of a service-connected medical disability. On September 14, 1988, Walker applied for a maintenance-ambulance driver position with the defendant, Aberdeen–Monroe County Hospital. On the application form, Walker answered "yes" to the question inquiring whether he had a "medical condition" but did not elaborate, although he maintains that he orally informed the maintenance supervisor that he had sarcoidosis. A few days later, he was hired by the hospital as an ambulance driver and maintenance employee.

Throughout his time with the hospital, Walker received satisfactory job performance reviews, and in 1990, he was promoted to the position of supply supervisor and received a wage increase. Sarcoidosis was never mentioned during any of the reviews, nor does any reference to the condition appear on any of the evaluation forms in Walker's personnel file.

By February, 1991, Walker's vision had declined significantly because of cataracts which developed in his left eye from the use of steroids, which he takes daily to control the sarcoidosis. Consequently, he was barred from driving ambulances, although he encountered no other work problems. By the middle of February, Walker required surgery to remove the cataracts. He was granted paid sick leave in February and March, 1991, and a medical leave of absence on March 27, 1991. On his leave request form, Walker indicated that he would be out for an "indefinite" period of time. However, the hospital's employee handbook, which Walker admits receiving, states unequivocally that the "maximum time for a leave of absence is 90 days," although a 90–day extension can be granted upon validation from the employee that additional time is needed. It further provides that the "[p]rivilege of returning to work after leave of absence is to be subject to employment conditions prevailing at the time of the return." Walker main-

---

1. In layman's terms, sarcoidosis is defined as a "chronic disease ... characterized by the formation of nodules resembling true tubercles in the lymph nodes, lungs, bones, skin, and other organs." *Webster's Third New International Dictionary* (1961). Although sarcoidosis is incurable, Walker admits that it is controllable with medication.

tains that during the period he was absent from work, he "frequently checked back with them" about his progress and his intention of returning when he recovered. In response, the hospital contends that Walker failed to report at the end of his 90–days and did not request an extension of his leave time.

On June 29, 1991, Walker's employment with the hospital was terminated. According to the hospital's administrator, this action was taken for several reasons. First, Walker had not reported his employment intentions at the end of his 90 days leave as required by the employee handbook. And second, because of the need to cut expenses and a reduction in the number of patients hospitalized, the administrator was forced to combine supervisory positions, thereby eliminating Walker's position and requiring another department supervisor to assume his responsibilities as the supply supervisor. Apparently, though, no one informed Walker of his termination, because in late July he arrived at the hospital and presented a release from his doctor allowing him to resume work. Although the circumstances surrounding his attempted return are disputed, it is beyond doubt that Walker never worked for the hospital again.

According to Walker, the sarcoidosis has not affected his lungs, although he has experienced some swelling and pain in the joints and discoloration of the skin in his knees, ankles, and feet. These conditions are controlled with the daily use of steroids. The sarcoidosis has affected his eyes, as discussed above, but he controls any problems with steroids and eyedrops, thereby allowing him to "perform normally." His corrected vision is 20/30. Despite the sarcoidosis, he remains active in city league basketball and continues to swim. The disease is not readily apparent, according to Walker, and people would not be aware of its existence unless he told them about it. He maintains "[t]here's not a job I feel like I could not do," nor does he believe he is physically handicapped from performing any kind of physical labor, and in fact, at the time of his deposition, he had applied for work on an oil rig. He has also sought social security disability benefits, but these were denied.

## DISCUSSION

■ Section 504 of the Rehabilitation Act prohibits discrimination against qualified handicapped employees in programs that receive federal financial assistance. To qualify for relief under the Act, plaintiff must prove that (1) he was an "individual with handicaps," (2) he was "otherwise qualified," (3) he worked for a "program or activity" that received federal financial assistance, and (4) he was terminated *solely* because of his handicap. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993). On summary judgment, plaintiff need only show that there is a genuine issue of material fact on each of these elements. *Chiari v. City of League City*, 920 F.2d 311, 314–15 (5th Cir.1991). Defendant's request for summary dismissal of this case is based on its contention that plaintiff cannot raise a genuine issue of material fact on three of these four requirements.[2] Plaintiff, of course, disagrees. Having carefully considered the argument presented and the pertinent case law, the court finds plaintiff cannot pass the initial threshold of proving his case, i.e., that he is an "individual with handicaps" within the meaning of the Act.

### I.

In pertinent part, the Act provides: "No otherwise qualified individual with handicaps ... as defined in section 706(8) of this title, shall, solely by reason of ... his handicap ... be subjected to discrimination under any program or activity receiving federal financial assistance...." 29 U.S.C. § 794(a).[3] An "individual with handicaps" is defined as "any person who (i) has a physical or mental impairment which substantially limits one or

---

2. Although the hospital preserved the issue of whether Walker worked for a "program or activity" which received federal assistance, it did not address that requirement in this motion.

3. This statute was amended, effective October 29, 1992, to substitute the phrase "individual with a disability" for the phrase "individual with handicaps." The court is required to apply the statute as it existed when this suit was filed, *Chandler*, 2 F.3d at 1389 n. 7, and the parties have not argued to the contrary.

more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). For further guidance, the court's attention is directed to the Department of Health and Human Services regulations implementing the Act. *See School Board of Nassau County v. Arline,* 480 U.S. 273, 280, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987). Those regulations define "physical impairment" as

> any physiological disorder or condition, cosmetic disfiguration, or anatomical loss affecting one of more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine....

45 C.F.R. § 84.3(j)(2)(i). "Major life activities" are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.-3(j)(2)(ii). A person is considered to "ha[ve] a record of such an impairment" if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 45 C.F.R. § 84.3(j)(2)(iii). Finally, one "is regarded as having such an impairment" if he

> (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by [an employer] as constituting such a limitation; (B) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (c) has none of the [above described impairments] but is treated by [an employer] as having such an impairment.

45 C.F.R. 84.3(j)(2)(iv).

## II.

With these guidelines in mind, the court finds that plaintiff has failed to raise a genuine issue of material fact on the question of whether he is an "individual with handicaps" as contemplated by the Rehabilitation Act. Plaintiff himself testified unequivocally that his physical activities—both on and off the job—are unrestricted and unhampered by the sarcoidosis. This testimony plainly indicates that the problems associated with the disease do not substantially limit any of his major life activities. The Fifth Circuit has recently held that a "person is not handicapped if his vision can be corrected to 20/200." *Chandler,* 2 F.3d at 1390. Certainly then, plaintiff, whose vision is corrected to 20/30, is likewise, as a matter of law, not handicapped by the eye problems which result from the side effects of the medication he takes to control the sarcoidosis. Neither would he be considered as having a history of a physical impairment which substantially limits his major life activities. Even when his vision was at its worst, plaintiff was prohibited only from driving and then only for a limited amount of time. He clearly testified that this prohibition only marginally affected his work. Plaintiff has brought forth no evidence to suggest that his supervisors considered him handicapped by his sarcoidosis. His work record was impeccable, and his reviews were always satisfactory. Plaintiff himself testified that his condition was never mentioned during any of his evaluations. In this court's view, these circumstances do not indicate that defendant regarded plaintiff as having a physical impairment which substantially limited any major life activity.

## CONCLUSION

The court recognizes that in order to be covered by the Rehabilitation Act, a person need not have a so-called "traditional" handicap. 45 C.F.R. § 84 app. (Analysis of Final Regulation). However, he must have a physical impairment, the "severity [of which] is such that it results in a substantial limitation of one or more major life activities." *Id.* In this case, the court does not believe plaintiff has raised a genuine issue on this threshold question. Because summary judgment is appropriate, no ruling is necessary on the other pending motions.

A final judgment shall issue.

## ORDER AND FINAL JUDGMENT

Pursuant to an opinion filed contemporaneously herewith, it is ORDERED:

That defendant's motion for summary judgment is well taken and is granted;

That, in light of this ruling, the remaining motions are moot;

That this cause is hereby dismissed with prejudice.

SO ORDERED.