Ellen **SWANSON** and Arne Swanson, **Plaintiffs,**

v.

**PALM BEACH COUNTY BOARD Of COUNTY COMMISSIONERS, Defendant.**

No. 94–8183–CIV.

United States District Court, S.D. Florida.

June 7, 1995.

Isidro Manuel Garcia, Lake Worth, Fla., for Plaintiffs.

Denise Joanne Bleau, Palm Beach County Attorney's Office, West Palm Beach, Fla., for Defendant.

*MEMORANDUM OPINION ON ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendant Palm Beach County Board of County Commissioners' ("County") motion for summary judgment as to Count I of the first amended complaint. By order dated April 24, 1995, the Court granted the County's motion, with this memorandum opinion to follow.

*PROCEDURAL BACKGROUND*

Plaintiff Ellen Swanson is an employee of the County. In Count I of the first amended complaint, Swanson asserts a claim against the County under the Americans with Disabilities Act. Swanson claims that she suffers a visual disability within the meaning of the Act; namely, a detached retina of her left eye. Swanson further alleges that the County, through Swanson's immediate supervisor, Dorothy Kolins, has harassed her on account of such disability and has failed to make reasonable accommodations for the disability, in violation of the Act.

Count I, as to which the County seeks summary judgment, is the only remaining claim in this action. By order dated March 29, 1995, the Court granted the County's motion for judgment on the pleadings as to

Count II, where Swanson asserted a claim against the County for intentional infliction of emotional distress, and Count III, where Swanson's spouse, Arne Swanson, asserted a loss of consortium claim.

*STANDARD OF REVIEW*

In deciding motions for summary judgment, the Court must use as its guide the standard set forth in *Fed.R.Civ.P.* 56(c), which states in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The United States Supreme Court has addressed the standard for summary judgment, as set forth in Rule 56(c), as follows:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

After the moving party has met this initial burden, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). *Fed.R.Civ.P.* 56(e), however, does not permit the nonmoving party to avoid summary judgment by resting on the pleadings, but "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, the mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient; there must

be evidence on which the jury could reasonably find for the non-movant. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

## UNDISPUTED MATERIAL FACTS

On February 27, 1990, Plaintiff Ellen Swanson became employed by the County as a cashier in the water utilities division. On March 5, 1992, Swanson underwent a hysterectomy. The post-surgical recovery period lasted approximately six weeks, after which time Swanson returned to work half-days. On April 21, 1992, Swanson suffered a retinal detachment in her left eye, for which she underwent emergency surgical repair. Immediately after the surgery, Swanson's vision in her left eye was limited to hand motion. Subsequently, her physician prescribed glasses, which brought her vision up to 20/30 by January, 1993. Her 20/20 vision in her right eye has remained unaffected.

The at-home recuperation period for the eye surgery lasted 2½ weeks. Afterwards, Swanson returned to work on a half-day schedule for a period of time, before resuming her full time duties. In connection with her hysterectomy, her detached retina, and other leave periods, all of which were approved by the County, Swanson was absent from work for a total of 600 hours in 1992, and 450 hours in 1993. Swanson claims that she was harassed by her supervisor, Dorothy Kolins, on account of these prolonged absences.

Swanson's position as a cashier required that she perform rapid and accurate arithmetic calculations, that she scan checks and stubs very quickly, and that she work with a computer. Upon returning to her post after the eye surgery, Swanson experienced productivity and accuracy deficiencies. In February, 1993, Swanson received an annual performance evaluation with a rating of "needs improvement." In March, 1993, Swanson requested that the County make an accommodation for her eye surgery, which, according to Swanson, had negatively affected her work performance.

In July, 1993, Swanson underwent an evaluation of her residual visual difficulties at the Lighthouse for the Blind. The examining doctor recommended various devices to improve her work performance, including a magnifying lamp, and a computer screen. The County agreed to purchase these devices for Swanson. The County also withdrew the negative evaluation that Swanson had received. Finally, in October, 1993, the County offered Swanson the opportunity to transfer to the position of billing accounts clerk, in a different section of the water utilities division. Swanson accepted the transfer. She commenced work at her new post in January, 1994. She loves her new position and she gets along "fantastically" with her new supervisor.

## DISCUSSION

The Americans with Disabilities Act ("ADA") was enacted to eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101. The Act provides that an employer shall not discriminate against a qualified individual with a disability, on account of such disability, with regard to the individual's terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). The term "discrimination" includes, *inter alia,* failure on the part of the employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee who has a disability. 42 U.S.C. § 12112(b)(5)(A). "The term 'disability' means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).

Although the ADA itself does not define the term "major life activities," courts use the definition found in the ADA regulations, which, in turn, are borrowed from the regulations for the Rehabilitation Act. *See Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). "The term means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* (citing 29 C.F.R. § 1630.2(i)). An individual who claims that an impairment substantially limits the major life activity of "working," must show "signifi-

cant restriction in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." *Id.* (citing 29 C.F.R. § 1630.2(j)(3)(i)). "The regulations specify that the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* Applying these criteria, the Fifth Circuit has determined that impaired vision is not a handicap within the meaning of the Rehabilitation Act. *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) (Vision that can be corrected to 20/60 is not a handicap for purposes of the Rehabilitation Act.).

█ In this case, Swanson claims that the sequela of her detached retina constitutes a disability within the meaning of the ADA. The Court disagrees. Swanson's post-surgical vision in the left eye improved to 20/30; and the vision in her right eye is 20/20. Hence, under the clear holding in *Chandler,* which pertains to the Rehabilitation Act but is applicable to the ADA, Swanson does not have a disability within the meaning of the ADA. In any event, after recuperating from the surgery, Swanson continued to perform her prior job of cashier, albeit with some difficulties. Moreover, Swanson does not complain of any problems in performing the job of billing clerk, to which she has since transferred. Therefore, Swanson cannot claim that, as a result of her detached retina, she is unable to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

Even if Swanson had been rendered completely unable to perform the particular job of cashier, which she held prior to her eye affliction, such inability does not constitute a disability under the ADA. *See e.g. Welsh v. City of Tulsa,* 977 F.2d 1415 (10th Cir.1992), and cases cited therein. In *Welsh,* the Tenth Circuit found that an applicant who was rejected for the position of firefighter, due to decreased sensation to pin pricks and to hot and cold in two fingers of his right hand, did not suffer from a disability within the meaning of the Rehabilitation Act, because the impairment limited his ability to perform only one job. *Id.* at 1416–19. *See also Jasany v. United States Postal Service,* 755 F.2d 1244 (6th Cir.1985) (Mild case of strabismus, which interfered with the plaintiff's ability to operate a machine as part of his job duties, but did not otherwise significantly decrease his ability to obtain satisfactory employment, was not a disability under the Rehabilitation Act.). As discussed above, a determination of what constitutes a disability for purposes of Rehabilitation Act is fully transportable to the context of the ADA.

Based on the foregoing analysis, the Court concludes that Swanson's residual visual impairment, resulting from a repaired detached retina, does not constitute a disability within the meaning of the ADA. Having made this determination, the Court need not reach Swanson's contention that the County violated the ADA, through harassment on account of, and failure to make accommodations for, the claimed disability. The Court must note, however, that Swanson's claims of harassment by her supervisor "on account of her disability" are tenuous at best. In addition, contrary to Swanson's assertions, the record shows that the County did take steps to accommodate Swanson's visual difficulties, through the procurement of assistive devices and, ultimately, by transferring Swanson to a position where she reports no further problems.

DONE AND ORDERED.