**Pamela McCoy CLINE, Plaintiff,**

v.

**FORT HOWARD CORPORATION, Defendant.**

**No. 96–530–S.**

United States District Court, E.D. Oklahoma.

April 25, 1997.

---

**2.** Based on its rulings, the court need not reach defendant's argument that 42 U.S.C. § 9613(h)

bars this lawsuit.

Matthew A. P. Schumacher, Muskogee, OK, for Plaintiff.

Charles S. Plumb, James C. Milton, Tulsa, OK, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SEAY, District Judge.

Plaintiff Pamela McCoy Cline instituted this action against Defendant Fort Howard

Corporation ("Fort Howard") pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Cline contends Fort Howard discriminated against her on the basis of her disability (vision impairment) and on account of her sex in connection with her transfer from the rewinder department to the folder department of Fort Howard's plant.[1] Both Cline and Fort Howard have filed motions for summary judgment. Because the court finds Cline was not disabled within the meaning of the ADA and was not discriminated against on the basis of her sex, Fort Howard is entitled to summary judgment in its favor on both claims asserted by Cline.

## I.

Cline is employed by Fort Howard at its Muskogee, Oklahoma, mill. Prior to September 1994, she was employed in the folder department where she operated a mornap machine.[2] Cline was making $13.73 per hour operating the mornap machine. In September 1994, Cline was transferred, at her request, to the rewinder department and the entry level position of general laborer at a pay rate of $13.42 per hour.

The rewinder department consists of three positions: machine operator, back tender, and general laborer. Those employed as general laborers must be capable of operating various machines. When openings occur in the machine operator or back tender positions, general laborers assume those positions on a temporary basis and are compensated at the higher rate of pay commensurate with the duties of either machine operator or back tender. General laborers assume, or fill-in, these positions during the period of vacation, illness, leave, or other reason which created the temporary vacancy. Unless they are awarded a permanent position as either a machine operator or back tender, general laborers return to their general laborer positions after the termination of the temporary vacancy period. Likewise, if no machine operator or back tender temporary positions exist, general laborers are required to perform the wide variety of functions associated with the general laborer position, including operating a lift truck. Thus, since no guarantees can be provided to general laborers assuring them of continued employment in the machine operator or back tender positions, those employed as general laborers must be able to operate a lift truck to satisfy the requirements of the general laborer position.

Shortly after being transferred to the rewinder department, Cline was trained on the operation of a lift truck. This training took place in January 1995. In November 1995, Cline told Fort Howard officials she did not want to, and could not, drive a lift truck because of her vision problem. Cline's supervisors offered her additional training on lift truck operation. Cline never availed herself of any additional training and, instead, relied on a letter from Dr. Everett L. Wiggins, M.D., to support her claimed inability to operate a lift truck. In his December 21, 1995, letter, Wiggins makes the following statement:

> Pamela McCoy was seen by me on December 21, 1995, for an ophthalmological examination. The exam revealed a decrease in her side visual fields. Functional limitations are those hazardous to persons operating machinery which require looking backwards or having normal peripheral vision.

As a result of her continued insistence regarding her inability to operate a lift truck, Cline was transferred back to her previous position of machine operator in the folder department effective January 15, 1996. This position does not require Cline to operate a lift truck. Cline was paid an hourly wage of $14.14 when she transferred to the folder department. in January 1996. Currently,

---

1. Cline initially asserted a sexual harassment claim against Fort Howard arising out of the alleged actions of a co-worker, Ivory Vann. As evidenced by the pretrial order on file in this case, Cline has since abandoned this sexual harassment claim.

2. According to Cline, a mornap machine makes and folds napkins.

Cline is receiving an hourly wage of $14.56 as a folder department machine operator. Cline's earnings in 1996 in her position in the folder department were virtually identical to her 1995 earnings while employed in the rewinder department—$40,495.85 (1996 earnings) compared with $40,437.91 (1995 earnings).

It is Cline's contention that she cannot operate a lift truck because of vision problems. This is the only task Cline cannot perform at Fort Howard. In her deposition, Cline stated she can perform all other tasks and responsibilities in both the folder and rewinder departments. Cline does not contend that other aspects of her professional or private life are affected in any way as a result of her claimed visual impairment. In fact, her deposition testimony reveals that Cline drives to and from work, and transports her three children by car to various destinations. Cline has an Oklahoma driver's license with no restrictive codes requiring corrective lenses. Neither Cline's ability to raise her family nor her involvement in recreational and social activities are affected by her vision impairment.

## II.

A party moving for summary judgment under Rule 56 of the Federal Rules of Civil Procedure must show the absence of evidence to support the opposing party's case. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A moving party must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact. *Universal Money Centers v. AT & T,* 22 F.3d 1527, 1529 (10th Cir.), *cert. denied,* 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994) (quoting Fed.R.Civ.P. 56(c)). The proponent of a summary judgment motion need not negate the opponent's claim or evidence, but rather, his burden is to show that there is no evidence in the record to support the claim. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. The nonmoving party must go beyond the pleadings and "must set forth specific facts showing that

there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics v. First Affiliated Securities,* 912 F.2d 1238, 1241 (10th Cir.1990).

Summary judgment is not appropriate if there exists a genuine material factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Thomas v. IBM,* 48 F.3d 478, 486 (10th Cir. 1995) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the summary judgment motion. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. With these standards in mind, the court turns to the merits of the parties' motions.

## III.

■ Fort Howard argues Cline is not disabled under the ADA because her physical impairment, as manifested by nearsightedness and difficulties with peripheral vision, does not substantially limit any of her major life activities. The court agrees.

The ADA is intended to eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1). In this regard, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined under the ADA as "an individual with a disability who, with

or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In the context of a change in employment status, a prima facie case of disability discrimination under the ADA requires an aggrieved employee to establish the following elements:

> (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, with or without reasonable accommodation (which he must describe), she is able to perform the essential functions of the job; and (3) that the employer made an adverse employment decision because of her disability.

*Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir.1995) (citing *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995)). Thus, the first element of any ADA claim is the establishment of a "disability."

Under the ADA, a "disability" is defined as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). In relying on subsection (A) in order to establish her "disability," Cline contends she is suffering from a physical impairment that substantially limits a major life activity.[3] Subsection (A) requires the court to define two terms in order to evaluate Cline's disability status—"major life activities" and "substantially limits." Although the ADA does not define the term "major life activities," guidance can be found in the implementing regulations issued by the EEOC. *Bolton v. Scrivner,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). "The term 'means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning

and working.' " *Id.* (citing 29 C.F.R. § 1630.2(i)); *see also Miller v. Department of Corrections of State of Illinois,* 916 F.Supp. 863, 866 (C.D.Ill.1996) ("Major life activities" are those activities that the average person in society can perform with little or no difficulty.). In this case, Cline contends the major life activity of seeing has been substantially limited by her physical impairment.

■ The second requirement under subsection (A) is that the impairment at issue "substantially limit" the major life activity at issue. Not every physical impairment qualifies as a disability because not every impairment substantially limits a major life activity. *Overturf v. Penn Ventilator, Co., Inc.,* 929 F.Supp. 895, 897 (E.D.Pa.1996). Under the implementing regulations, an individual is "substantially limited" in a "major life activity" if she cannot perform the activity or is "significantly restricted" as to the condition, manner, or duration under which he can perform the activity as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1). In *Bolton,* the Tenth Circuit provided further guidance with respect to this evaluation when it concluded three factors should be considered when determining whether an impairment substantially limits an individual's major life activities: the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *Bolton,* 36 F.3d at 943; *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1444 (10th Cir.1996).

■ As noted above, Cline relies on her nearsightedness[4] and Dr. Wiggins' notation that she has peripheral vision problems. Cline argues the combined effect of these vision problems compels a finding that she is disabled under the ADA. She contends she

---

**3.** No argument is made by Cline under section 12102(2) that she has either a record of impairment or was regarded as having such an impairment.

**4.** No documented proof has been submitted that Cline is nearsighted. There is deposition testimony from Cline, however, that she is nearsight-

ed with an astigmatism problem and that she has worn prescription glasses for approximately the last twenty-two to twenty-five years. Fort Howard does not dispute Cline's nearsightedness and the court will assume, for purposes of this motion, that Cline is nearsighted, although the extent of her nearsightedness is unknown.

does not have to be totally blind in order to have her major life activity of seeing impaired. While the court agrees with Cline that she need not be totally blind to be disabled under the ADA, the record before the court conclusively establishes that her current condition—nearsightedness and poor peripheral vision—does not amount to a substantial limitation on the major life activity of seeing.

Other courts confronted with restricted vision conditions have determined that such conditions do not constitute a disability under the ADA because they do not substantially limit any of the major life activities. In *Overturf*, the plaintiff developed a tumor behind his eye which, he alleged, caused double and sometimes triple vision and resulted in a loss of peripheral vision. In arguing that plaintiff's eye condition did not substantially limit plaintiff's life activities, plaintiff's employer noted plaintiff's ability to compensate for his double and triple vision by adjusting his line of vision, and the fact that plaintiff can drive a car, watch television, and read. *Overturf*, 929 F.Supp. at 898. The court agreed with the employer and determined that although this impairment substantially restricted plaintiff in certain ways, it did not substantially limit any of his major life activities, including seeing.

In *Swanson v. Palm Beach County Bd. Of County Com'rs*, 932 F.Supp. 283 (S.D.Fla. 1995), the plaintiff claimed a retinal detachment of her left eye, which resulted in 20/30 vision of that eye, constituted a disability under the ADA. In rejecting plaintiff's argument, the court referenced a Fifth Circuit case, *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994), which held impaired vision (20/60 vision) was not a handicap under the Rehabilitation Act.[5] The court concluded plaintiff's 20/30 vision was not a substantial limitation on plaintiff's major life activity of working because there

was no proof she was "unable to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Swanson*, 932 F.Supp. at 286.

In *Walker v. Aberdeen–Monroe County Hosp.*, 838 F.Supp. 285 (N.D.Miss.1993), the plaintiff developed cataracts in his eyes as a result of medication he was taking to control sarcoidosis. Plaintiff's testimony was that both his work and non-work activities were not restricted or hampered in any way by the sarcoidosis. With respect to his eye problems, plaintiff used steroids and eye drops to control such problems and his corrected vision was 20/30. Plaintiff's work was only marginally affected by his eye problems. He remained active in city league basketball and swimming. He was only prohibited from driving when his condition was at its worst, and then, only for a short period of time. The court evaluated plaintiff's eye problems in conjunction with his sarcoidosis and determined he did riot have a physical impairment which substantially limited any major life activity. *Id.* at 288.

The common theme running through these cited cases is the recognition by the courts that a visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity. In this case, Cline's vision problems admittedly only affect her ability to perform the specific function of operating a lift truck. Cline can otherwise perform activities requiring the use of her eyesight, i.e. driving to and from work, transporting her children to various destinations, participating in recreational activities, and performing all other tasks associated with employment in both the folder and rewinder departments.[6] Under these circumstances,

---

5. Case law interpreting the Rehabilitation Act of 1973 is applicable with respect to the interpretation of the ADA and, more specifically, the term "disability" as used in the ADA. *Bolton*, 36 F.3d at 942–43.

6. Although the nature of Cline's nearsightedness is not documented in the record, Cline's vision is

apparently aided by corrective lenses. The court rejects any claim to the effect that a nearsighted person who wears prescription glasses or contact lenses is automatically disabled. Although the court recognizes the split of authority on the consideration of assistive devices in determining whether an individual is substantially limited in a

the court can only conclude that while Cline's visual impairment—nearsightedness and poor peripheral vision—may constitute a restriction on her ability to perform a specific task associated with her employment, it does not substantially limit the major life activity of seeing.

■ Moreover, to the extent Cline is attempting to claim a substantial limitation on the major life activity of working, the court likewise concludes no disability has been established. Initially, the court notes the fact that Cline's visual problems may constitute an impairment limiting her ability to perform the assigned task of lift truck operator in the rewinder department does not necessarily mean she is handicapped under the ADA. 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."); *Bolton,* 36 F.3d at 943; *see also Welsh v. Tulsa,* 977 F.2d 1415, 1419 (10th Cir.1992). "Plaintiff bears the burden 'to demonstrate that [s]he is disabled in some more general sense transcending [her] specific job, [and to establish] that [her] limitations substantially impair a major life activity.'" *Otis v. Canadian Valley–Reeves Meat Co.,* 884 F.Supp. 446, 449 (W.D.Okla.1994) (quoting *Bolton v. Scrivner, Inc.,* 836 F.Supp. 783, 788 (W.D.Okla.1993)).

The additional factors outlined by the Tenth Circuit which may be considered in determining whether a plaintiff has shown a substantial limitation in the major life activity of working are:

(A) the geographic area to which the individual has reasonable access;

(B) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Bolton,* 36 F.3d at 943, 29 C.F.R. § 1630.2(j)(3)(ii). No evidence has been presented by Cline concerning these factors. In fact, the record itself belies any contention that Cline is substantially limited in the major life activity of working. Since being transferred from the rewinder department, Cline has been continually employed by Fort Howard in the folder department. Her visual problems have in no way interfered with her employment in this department.

Having failed to established that she is "disabled" within the meaning of the ADA, Cline's disability discrimination claim must fail. Fort Howard is entitled to summary judgment in its favor on Cline's ADA claim.[7]

## IV.

■ Fort Howard also seeks the entry of summary judgment in its favor on Cline's sex

major life activity, *compare Wilson v. Pennsylvania State Police Department,* 964 F.Supp. 898 (E.D.Pa.1997) *with Schluter v. Industrial Coils, Inc.,* 928 F.Supp. 1437, 1445 (W.D.Wis.1996) and *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 813 (N.D.Tex.1994), the court finds the better reasoned approach in the context of vision is one which evaluates the limitation with regard to the use and effectiveness of corrective devices. To consider a nearsighted person disabled merely because he or she wears corrective lenses would be to render the term "substantially limited" meaningless. As noted by the court in *Schluter:*

If ... a near-sighted person can correct her vision with eyeglasses or contact lenses, she cannot argue that her life is substantially limited by her condition. To say that a person who

needs ... eyeglasses is disabled in fact is to read out of the act's first definition of disability the requirement that it applies only to those persons who are "substantially limited" in major life activities.

*Schluter,* 928 F.Supp. at 1445 (citing *Coghlan,* 851 F.Supp. at 813).

7. Having determined Cline is not "disabled" under the ADA, the court need not address Fort Howard's alternative argument that it reasonably accommodated Cline's "disability." The record does show, however, that after determining Cline could not, or would not, operate a lift truck, Fort Howard transferred her to the folder department where she received essentially the same pay and benefits.

discrimination claim. In connection with her sex discrimination claim, Cline contends she was treated differently than a male, disabled (deaf) employee, David McDonald. Cline contends McDonald, who was also employed as a general laborer in the rewinder department, was not required to operate a lift truck. In response, Fort Howard submits the affidavit of Debbie Thornbrugh, rewinder department team leader, who states McDonald transferred into the rewinder department in October 1995 and was immediately placed in a temporary position operating a Flexo Press. This temporary position did not require McDonald to operate a lift truck. After seven months on this machine, McDonald bid on a permanent position of core machine operator in the rewinder department and was awarded the job. Consequently, McDonald never had to operate a lift truck during his tenure as a general laborer, although had he remained in that position he would have had to operate a lift truck just like all the other general laborers who were not assigned to temporary machine positions in the rewinder department.

■■■ Having brought a Title VII disparate treatment claim, Cline bears the burden of establishing a prima facie case of sex discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Ramsey v. City and County of Denver*, 907 F.2d 1004, 1007 (10th Cir.1990), *cert. denied*, 506 U.S. 907, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992). Cline can establish a prima facie case of sex discrimination in connection with her transfer by showing that (1) she belong to a protected class; (2) she was adversely affected by the Fort Howard's actions; (3) she was qualified for her position; and (4) she was treated less favorably than her male counterparts. *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1380 (10th Cir.1994). Utilizing this test, the court finds that Cline has failed to establish a prima facie case of sex discrimination.

Cline has failed to satisfy element (4)— that in choosing her for transfer Fort Howard treated her less favorably than other male employees. Cline admits that Fort Howard makes it a practice to transfer employees, both male and female, who cannot perform the essential functions of their jobs. She also admits that both male and female general laborers were required to drive lift trucks. Moreover, with respect to McDonald and the fact that he never had to operate a lift truck while a general laborer, the undisputed evidence is that McDonald (like Cline) was initially temporarily filling in on a machine position which did not require him to operate a lift truck. Again, the undisputed evidence is that following the termination of this temporary position, McDonald was awarded a permanent core machine operator position—a position which does not require the operation of a lift truck. Thus, there has been no evidence presented suggesting, much less establishing, that McDonald was treated any differently than Cline with respect to the operation of a lift truck.

Consequently, Cline has failed to establish that she was treated differently than similarly situated males in connection with her transfer to the folder department due to her inability to perform the functions of lift truck operator. Fort Howard is therefore entitled to summary judgment in its favor on Cline's sex discrimination claim.

### V.

Based on the foregoing reasons, Fort Howard is entitled to summary judgment on Cline's disability and sex discrimination claims. Cline's motion for summary judgment is denied. Fort Howard's motion for summary judgment is granted.